IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

RECEIVED
2006 MAY -5  A 10: 40

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

TIMOTHY JOE REEVES, )
)
Plaintiff, )
)
v. ) Case No.
) 1.05-CV-00542-T
UNITED STATES OF AMERICA, )
)
Defendant. )
)

## PLAINTIFF TIMOTHY JOE REEVES' MEMORANDUM OF FACTS AND LAW IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

Plaintiff Timothy Joe Reeves (sometimes referred to herein as the "Plaintiff" and sometimes referred to as "Reeves") submits this memorandum in support of his motion for summary judgment.

**I.  INTRODUCTION**

This action arises from an assessment against the Plaintiff of the two percent (2%) tax (the "Tax") on wagers placed in states where wagers are not authorized pursuant to Section 4401 of the Internal Revenue Code of 1986, as amended (the "Code), and the imposition of the seventy-five percent (75%) fraud penalty (the "Fraud Penalty") found at Section 6651 of the Code (the Tax and the Fraud Penalty hereinafter sometimes collectively referred to as the "Assessment").  The Plaintiff alleges that the United States Government (sometimes referred to herein as the "Defendant" and sometimes referred to as the "United States"), by assessing the Tax and the Fraud Penalty, along with interest thereon, is in breach of that certain plea agreement (the "Plea Agreement") entered into between Reeves and the United States on October 14, 1999, in the case of *United States of America v. Timothy Joe Reeves*, C.R. No. 99-13-S, in the United States District Court for the Middle District of Alabama, Southern Division (the "Criminal

Case"). As hereinafter discussed, the Assessment is due to be dismissed under Fed. R. Civ. P. 56 because the Assessment is in direct violation of, and constitutes a breach of, the aforesaid Plea Agreement.

**STANDARD OF REVIEW**

Summary judgment is appropriate if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "material" if it is a legal element of a claim under applicable substantive law which might affect the outcome of the case. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *see also Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997). An issue is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Allen*, 121 F.3d at 646. On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. *Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646. Although all reasonable inferences arising from the undisputed facts should be made in favor of the nonmoving party, an inference based on speculation and conjecture is not reasonable. *Blackston v. Shook & Fletcher Insulation Co.*, 764 F.2d 1480, 1482 (11th Cir. 1985).

**II.   STATEMENT OF FACTS**

   A.   <u>**The Indictment**</u>

On or about February 3, 1999, Reeves, in Case Cr. No. 99-13-S, along with numerous co-defendants, was indicted in the United States District Court for the Middle District of Alabama, Southern Division (the "District Court"), on the following Counts and Statutes Charged:

   Count I:        18 U.S.C. §§ 371 and 1955

|               |                                                              |
|---------------|--------------------------------------------------------------|
|               | Conspiracy to operate an illegal gambling business           |
| Count II:     | 18 U.S.C. § 1955<br>Operation of an illegal gambling business |
| Count III:    | 18 U.S.C. § 1956(a)(1)(A)(i)<br>Money laundering             |
| Counts IV-XV: | 18 U.S.C. § 1956(a)(1)(B)(i)<br>Money laundering             |
| Count XVI:    | 18 U.S.C. 1956(h)<br>Conspiracy to launder money             |

(Exhibit A, Indictment, hereinafter referred to as the "Indictment".)

**B.    The In Rem Civil Actions**

Also in connection with the criminal case alleged under the Indictment, the United States filed the following Civil Actions in the District Court, seeking forfeiture of certain real and personal property in possession of Reeves that was allegedly used in the commission of the acts set forth in the Indictment:

1. Civil Action Nos. 97-T-63-S and 98-T-1334-S, seeking forfeiture of $85,966.68 located at two separate banks located in Dothan, Alabama;

2. Civil Action No. 97-T-64-S, seeking forfeiture of two parcels of real property located at 1073 and 1075 Malvern Road, Dothan, Houston County, Alabama;

3. Civil Action No. 97-T-63-S, seeking forfeiture of that certain parcel of real property known as Hunt's Restaurant, Lounge and Oyster Bar, located at 177 Campbellton Highway, Dothan, Houston County, Alabama;

4. Civil Action No. 98-D-570-S, seeking forfeiture of One Thousand United States Dollars ($1,000);

5. Civil Action No. 98-M-333-S, seeking forfeiture of miscellaneous computer equipment;

6. Civil Action Nos. 98-T-336-S and 98-T-571-S, seeking the forfeiture of a total of $197,000 in cash seized; and

      7.    Civil Action No. 98-C-335-S, seeking forfeiture of one 1997 GMC Sierra Pick-Up Truck.

### C. The Plea Agreement

On or about October 14, 1999, Reeves and the United States entered into and executed that certain Plea Agreement, whereby Reeves agreed to plead guilty under U.S.C. § 1957 to a one-count information charging money laundering and the Indictment was dismissed against Reeves. (Exhibit B, Plea Agreement) In connection with Reeves' agreement to disclose information to the United States, and to cooperate with the United States, and to truthfully testify in further proceedings (with the exception of his father, Billy Joe Reeves) arising out of the Indictment, the United States agreed to a two level downward departure in the sentencing guidelines. (Exhibit B, Plea Agreement, at pp. 2,4) Furthermore, pursuant to the Plea Agreement, Reeves agreed to forfeit his interest in the following cash and property:

      1.    $94,296.87 from Hunt's Seafood Operating Account Number 0000083 (Exhibit B, Plea Agreement, at p. 4);

      2.    The real property located at 1073 Malvern Road, Dothan, Houston County, Alabama, fixtures and trailers thereon (Exhibit B, Plea Agreement, at p. 4);

      3.    One 1997 GMC Sierra Pick-Up Truck (Exhibit B, Plea Agreement, at p. 4; and

      4.    One Thousand United States Dollars ($1,000) (Exhibit B, Plea Agreement, at p. 4).

Also pursuant to the Plea Agreement, the United States agreed to return the following property to Reeves and to dismiss the civil forfeiture cases:

1. Reeves was allowed to retain the additional money in the Hunt's Seafood Operating Account Number 0000083 (Exhibit B, Plea Agreement, at p. 4);

2. The real property located at 1075 Malvern Road, Dothan, Alabama and all fixtures and improvements thereon, which included the residence (Exhibit B, Plea Agreement, at p. 5);

3. Miscellaneous Computer Equipment seized at 1075 Malvern Road, Dothan, Alabama (Exhibit B, Plea Agreement, at p. 5); and

4. Fourteen Thousand Dollars ($14,000) of cash (Exhibit B, Plea Agreement, at p. 5).

The Plea Agreement also prohibited the United States from using any information provided by Reeves in connection with the Plea Agreement in any criminal or civil proceeding against him. The pertinent language is found in two different sections of the Plea Agreement, one being in Section III, Paragraph C, Subparagraph 2, discussing Reeves' agreement to cooperate with the United States, and the other being in Section III, Paragraph K, Subparagraph 1(h), describing the scope of the Plea Agreement, with each being set forth immediately below (the defendant referred to in the Plea Agreement is Reeves):

**Section III, Paragraph C, Subparagraph 2**

Provided that the defendant satisfies the terms of this plea agreement, any information that he truthfully discloses to the government during the course of his cooperation, concerning related offenses, will not be used against him, directly or indirectly. The defendant understands that this agreement does not bar his prosecution for capital felonies, perjury, false statements, and obstruction of justice.

(Exhibit B, Plea Agreement, p. 6)

### Section III, Paragraph K, Subparagraph 1(h)

The defendant further advises the Court that the defendant understands and has been advised that the evidence of a plea of guilty, later withdrawn or an offer to plead guilty to the crime charged in the Information herein, or of statements made in connection with and relevant to said plea or offer to plead, shall not be admissible in any civil or criminal proceeding against the defendant.

(Exhibit B, Plea Agreement, p. 11)

The Plea Agreement, in Section III, Paragraph G, further provided that, in return for Reeves' compliance, there would be no further federal criminal prosecution of Reeves in the Middle District of Alabama "regarding [Reeves'] involvement with violations of 18 USC § 1955, 1956, and 1957 *or any federal tax provision*." [Emphasis added] (Exhibit B, Plea Agreement, p. 8)

The Plea Agreement also provided in Section I, Paragraph B, that "[t]he United States further agrees that, based upon the substantial forfeitures made pursuant to this Agreement, there should be no fine imposed."

Following execution of the Plea Agreement and in compliance therewith, on October 28, 1999, Reeves testified as a Government witness for the United States in the case of United States v. Billy J. Reeves, Ronald L. Cherry, Larry J. Cobb, and Billy J. Adams, Criminal Action 99-13-S, in the United States District Court for the Middle District of Alabama, Northern Division. (Exhibit C, Transcript) Further, on February 3, 2000, Reeves gave a deposition in connection with Civil Action Nos. 98-T-1334-S and 98-T-336-S. (Exhibit D, Deposition) The United States, upon Reeves' satisfaction of his obligations under the Plea Agreement, accepted Reeves' guilty plea as contemplated thereunder, and a Judgment in Reeves' criminal case was filed and recorded with the Clerk of the U.S. District Court for the Middle District of Alabama on February 10, 2000, and also was received and marked as such by the Internal Revenue Service, Examination Group 1330, Birmingham, Alabama, on April 28, 2000. (Exhibit E, Judgment)

Reeves, pursuant to the terms of the Plea Agreement, served fifteen (15) months in federal prison, and also forfeited to the United States the cash and property set forth in the Plea Agreement.

### D. The Assessment

Following the events described above, the United States (via the Internal Revenue Service ["IRS"]) undertook to assess against Reeves the Tax and the Fraud Penalty, including interest thereon, for the time period of September 1, 1994, through January 31, 1997, which the government computed as follows (Exhibit F, Assessment):

| | |
|---|---|
| Total assessed excise tax | $585,576 |
| Total assessed fraud penalty | $439,411 |
| Total assessed interest | $944,057 |
| Total Assessment | $1,969,344 |

The fallacy of this is that the Plea Agreement, as hereinafter discussed, rendered this action totally inappropriate and extinguished the power of the IRS to make this Assessment. As set forth in IRS Form 886A, the Assessment against Reeves for the time period prior to the wiretap time period (the wiretap time period having begun on December 29, 1996) was based upon testimony and information of Reeves given in the Trial Testimony and at the Deposition, neither of which can be used against him due to the terms of the Plea Agreement as also hereinafter discussed. (Exhibit G, Auditor's Report, pp.1-6)

### III. ARGUMENT

#### A. The Plea Agreement Extinguished Plaintiff's Civil Tax Liabilities.

The law in the Eleventh Circuit concerning the federal government's obligations under a plea bargain, and also with regard to interpreting a plea agreement, is well established, with the following quote from *Arnett v. United States*, 804 F.2d 1200 (11th Cir. 1986), setting forth these obligations:

> *Santobello v. New York*, 404 U.S. 257, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971), provides the starting point for analyzing difficult issues involving plea bargains. *Santobello* teaches that when guilty pleas "rest in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled." 404 U.S. at 262, 92 S. Ct. at 499. The court must use objective standards to determine the disputed terms of a plea agreement. *United States v. Travis*, 735 F.2d 1129, 1132 (9th Cir. 1984). The court must decide whether the government's actions are inconsistent with what the defendant reasonably understood when he entered his guilty plea. *Johnson v. Beto*, 466 F.2d 478, 480 (5th Cir.1972); United *States v. Crusco*, 536 F.2d 21, 27 (3d Cir.1976).
> 
> …
> 
> The government asserts that we must permit its action against the farm since the written plea agreement does not explicitly prohibit a later forfeiture action. We cannot accept such a hyper-technical reading of the written agreement. A guilty plea is more than an admission of past conduct; it is a waiver of the right to trial before a judge or jury. To constitute a valid waiver of substantial constitutional rights, a guilty plea must represent a voluntary, knowing, intelligent act, and must be offered with sufficient awareness of the likely consequences. *Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 1468, 25 L. Ed. 2d 747 (1970); *United States v. French*, 719 F.2d 387, 390 (11th Cir. 1983), *cert. denied*, 466 U.S. 960, 104 S. Ct. 2174, 80 L. Ed. 2d 557 (1984). *See* Fed.R.Crim.P. 11.
> 
> …
> 
> "A plea agreement is not an appropriate context for the government to resort to a rigidly literal approach in the construction of language." *United States v. Bowler*, 585 F.2d 851, 854 (7th Cir. 1978). *See, e.g., United States v. Harvey*, 791 F.2d 294, 303 (4th Cir.1986) (ambiguous plea agreement "must be read against the Government"); *United States v. Crusco*, 536 F.2d 21, 26 (3d Cir.1976) ("strict and narrow interpretation of [government's] commitment is untenable"); *Correale v. United States*, 479 F.2d 944, 947 (1st Cir. 1973) (government held to "most meticulous standards of both promise and performance").

*Arnett,* 804 F.2d at 1202-1204 (11th Cir. 1986).

It is clear that Reeves understood the Plea Agreement to be a total settlement of all civil and/or criminal proceedings, and that he further understood the Plea Agreement to prohibit any future civil or criminal action by the United States, including the Assessment at issue in this case. (Exhibit H, Affidavit of Timothy Joe Reeves)  In the Plea Agreement, Reeves had agreed to forfeit substantial assets and to accept prison time as a part of his guilty plea, and this guilty plea rested in significant part on this understanding of the Plea Agreement, such that it was clearly part of the inducement that caused Reeves to enter into the same. (Exhibit H, Affidavit of

Timothy Joe Reeves). Consequently, the United States' current actions, in pursuing the Assessment against Reeves, are "clearly inconsistent with what [Reeves] reasonably understood when he entered his guilty plea." *Johnson v. Beto*, 466 F.2d 478, 480 (5th Cir.1972); *United States v. Crusco*, 536 F.2d 21, 27 (3d Cir.1976).

The evidence also clearly shows that Reeves' understanding of the Plea Agreement was, and is, a reasonable understanding. Ashton Holmes Ott, the Assistant United States Attorney who was the primary scrivener and one of the attorneys primarily representing the United States Government in the criminal case, who was one of the signatories to the Plea Agreement, in her affidavit, states that the IRS was "directly involved and present during the civil and criminal proceedings, as well as the Plea Agreement, of Timothy Joe Reeves." (Exhibit I, Affidavit of Ashton Holmes Ott, ¶ 5) Furthermore, in Paragraph 7 of her affidavit, she states:

> 7. That the Plea Agreement included both the settlement of civil and criminal proceedings against Timothy Joe Reeves and was intended by me as Assistant United States Attorney representing the United States to be a global settlement agreement, thereby precluding the Internal Revenue Service from assessing these wagering excise and income taxes, penalties, and interest against Timothy Joe Reeves for the time period of September 1, 1994, through January 31, 1997.

(Exhibit I, Affidavit of Ashton Holmes Ott, ¶ 7)

This testimony of Ms. Ott bears out the reasonableness of Reeves' understanding of the Plea Agreement, i.e., that it was a settlement by the United States which precluded the Assessment that the government now undertakes to prosecute. If an Assistant United States Attorney who was principally involved in the criminal and civil cases understood the Plea Agreement to preclude the Assessment, then surely it is reasonable for Reeves also to have concluded the same.

It is undisputed that the IRS was an active and direct participant in the Criminal Case, the related *in rem* civil cases, and the Plea Agreement, with this continuous participation by the IRS

further evidencing the reasonableness of Reeves' understanding of the Plea Agreement. First, Ms. Ott testified to the active, direct participation of the IRS in her affidavit, characterizing that the IRS was "directly involved and present during the civil and criminal proceedings, as well as the Plea Agreement ... ." (Exhibit I, Affidavit of Ashton Holmes Ott, ¶ 5). The IRS' active, direct participation is also shown by the transcript of the deposition of Reeves taken February 3, 2000, by the United States. This transcript shows that Mr. Gillis Douglass, an IRS agent, was present and representing the government's interest during the deposition. (Exhibit D, Deposition, p. 2, ¶ 15) Further, the Criminal Judgment filed in the Criminal Case with the Clerk of the U.S. District Court for the Middle District of Alabama, was filed on February 10, 2000, only seven days following the aforementioned deposition. The recorded Criminal Judgment was also stamped "Received, Internal Revenue Service, April 28, 2000, Examination Group 1330, Birmingham, Alabama." (Exhibit E, Judgment, p. 1) Thus, this uncontradicted evidence of the IRS's active, continuous and direct participation in the Criminal Case, the related civil forfeiture actions, and the Plea Agreement provides further evidence that Reeves' understanding that an assessment of wagering excise taxes, penalty and interest would be precluded by that Plea Agreement, is certainly reasonable in light of the circumstances surrounding the instant case.

When presented with a case with similar facts, *Creel v. Commissioner*, 419 F.3d 1135 (11th Cir. 2005), the Eleventh Circuit held that the IRS was prohibited from assessing federal taxes. In *Creel*, the taxpayer failed to file federal income tax returns for the years 1985 through 1991, and the case was prosecuted by the Department of Justice ("DOJ"). The DOJ assigned the case to the United States Attorney's Office for the Middle District of Alabama. *Id.* at 1137. The taxpayer pleaded guilty to both counts of a two count criminal information, and, as part of a plea agreement, was ordered to serve five years probation and ordered to make restitution to the IRS in the amount of $83,830 plus any applicable penalties and interest. *Id.* at 1137-1138. Following

the restitution payment, the IRS initiated a civil assessment to collect unpaid taxes plus penalties and interest for the years 1986 through1991, claiming that the $83,830 restitution payments had not fully satisfied his tax liabilities. *Id.* The taxpayer petitioned the United States Tax Court for review of the matter, and the Tax Court found that the taxpayer had testified "credibly and without contradiction that he understood that his payment of the $83,830 would satisfy his civil tax liability ...." *Id.* at 1139.

The IRS appealed the Tax Court's findings, contending that the satisfaction of the criminal restitution obligation had no bearing on the IRS's ability to pursue the taxpayer for additional civil tax liabilities. *Creel*, 419 F.3d at 1140. The Eleventh Circuit, however, disagreed with the IRS. The Court noted that in the abstract, the Commissioner may have been correct, but noted that the Commissioner's position "failed to take into account the unique facts and the nuances of the instant case, most notably the language of the restitution judgment and the actions of the U.S. Attorney." *Id.* The Court, looking at the unique facts of the case, held that the "restitution obligation was drafted such that Creel's civil tax liabilities were inextricably intertwined with his criminal tax liabilities, which together formed a condition of his probation." *Id.*, 1140-1142.

In the instant case, taking into account the unique facts of Reeves' case, including, without limitation, the Plea Agreement and Reeves' understanding thereof, the actions and testimony of the Assistant U.S. Attorney Ashton Holmes Ott, the active, continuous and direct participation of the IRS in the Criminal Case, and its acquiescence thereto, Reeves as the Plaintiff contends that his civil tax liabilities, if any, were, as in *Creel*, inextricably intertwined with the Plea Agreement and its resolution of the Criminal Case. The Plea Agreement, in Section III, Paragraph G, provided that, in return for Reeves' compliance, there would be no further federal criminal prosecution of Reeves in the Middle District of Alabama "regarding

[Reeves'] involvement with violations of 18 USC § 1955, 1956, and 1957 *or any federal tax provision.*" [Emphasis Added] (Exhibit B, Plea Agreement, p. 8) Further, as part of the Plea Agreement, the United States returned to Reeves various cash and property and dismissed the civil forfeiture cases. (Exhibit B, Plea Agreement, at p. 4, 5) Because of this, under the holding of *Creel*, the civil tax liability and penalty, including interest, that are included in the Assessment would have been extinguished by the Plea Agreement, and the Plea Agreement should be specifically enforced and the Assessment quashed.

Because of the foregoing, Reeves as the Plaintiff contends that there exists no genuine issue of material fact as to Reeves' understanding that the Plea Agreement prohibited the Assessment at issue in this case, that said understanding was reasonable in light of the circumstances, and that the Assessment of the Tax and the Fraud Penalty is, as a matter of law, in violation of the Plea Agreement, and as such is due to be quashed and collection of the Assessment enjoined pursuant to the provisions of §7421 of the Code.

### B. **The Plea Agreement Prohibits the Use of Plaintiff's Deposition and Trial Testimony.**

As set forth in the factual portion of this motion, the Plea Agreement contains the following provisions (the defendant referred to therein being Reeves):

**Section III, Paragraph C, Subparagraph 2**

> Provided that the defendant satisfies the terms of this plea agreement, any information that he truthfully discloses to the government during the course of his cooperation, concerning related offenses, will not be used against him, directly or indirectly. The defendant understands that this agreement does not bar his prosecution for capital felonies, perjury, false statements, and obstruction of justice.

(Exhibit B, Plea Agreement, p. 6)

### Section III, Paragraph K, Subparagraph 1(h)

The defendant further advises the Court that the defendant understands and has been advised that the evidence of a plea of guilty, later withdrawn or an offer to plead guilty to the crime charged in the Information herein, or of statements made in connection with and relevant to said plea or offer to plead, shall not be admissible in any civil or criminal proceeding against the defendant.

(Exhibit B, Plea Agreement, p. 11)

The United States' basis for the imposition of the wagering excise tax against Reeves is set forth in Form 886A. Under the section of the Auditor's Report entitled "Law and Government Position", the United States asserts that it has proven that Reeves was engaged in the business of accepting wagers, as required by Section 4401 of the Code, based on "the taxpayer's arrest and subsequent guilty plea as well as his trial and deposition testimony." (Exhibit G, Auditor's Report, pp. 4-5) The Plea Agreement specifically provides that "any information [Reeves] truthfully discloses to the government during the course of his cooperation, concerning related offenses, will not be used against him, directly or indirectly." (Exhibit B, Plea Agreement, p. 6) The Plea Agreement further provides that the "evidence of a plea of guilty … or of statements made in connection with and relevant to said plea or offer to plead, shall not be admissible in any civil or criminal proceeding against [Reeves]." (Exhibit B, Plea Agreement, p. 11) Assistant United States Attorney Ott stated in her affidavit that the Plea Agreement precluded the IRS from using the trial and deposition testimony in determining and making the Assessment. (Exhibit I, Affidavit of Ashton Holmes Ott, ¶ 8)

The Plea Agreement was entered into by the United States and Reeves on October 14, 1999, and has been in effect for over 6 years. Reeves has performed all his obligations under the Plea Agreement and would expect the government to honor its obligations under the Plea Agreement as well. Reeves' deposition and trial testimony were given after the execution of the Plea Agreement and in accordance with the terms and conditions thereof. Consequently, the

government's use of the same as the basis for determining and making the Assessment for any time period prior to the wiretap time period (i.e., prior to December 29, 1996) is a clear violation and breach by the United States of the terms of the Plea Agreement.

Because the evidence is clear that the United States, in violation of the terms of the Plea Agreement set forth hereinabove, is directly using Reeves' statements made at the Deposition and his trial testimony as the basis for the Assessment, we contend that the Assessment, as a matter of law, is in violation of the Plea Agreement, and as such is due to be quashed and collection of the Assessment enjoined pursuant to the provisions of §7421 of the Code.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is due to be granted.

Respectfully submitted on this 4th day of May, 2006.

_____
G. David Johnston
Bar No. ASB-8863-T636
Attorney for Plaintiff
Johnston, Hinesley, Flowers & Clenney, P.C.
291 North Oates Street
Dothan, Alabama 36303
334-793-1115


**OF COUNSEL**:


L. Drew Redden
Bar No. ASB-1710-D661
Attorney for Plaintiff
Redden, Mills & Clark
940 Financial Center
505 North 20th Street
Birmingham, Alabama 35203-2605
205-322-0457

G. David Johnston
Bar No. ASB-8863-T636
Attorney for Plaintiff
Johnston, Hinesley, Flowers & Clenney, P.C.
291 North Oates Street
Dothan, Alabama 36303
334-793-1115


William W. Hinesley
Bar No. ASB-4423-E65W
Attorney for Plaintiff
Johnston, Hinesley, Flowers & Clenney, P.C.
291 North Oates Street
Dothan, Alabama 36303
334-793-1115

## CERTIFICATE OF SERVICE

**IT IS HEREBY CERTIFIED** that I have served a copy of the foregoing Plaintiff Timothy Joe Reeves' Memorandum of Facts and Law in Support of His Motion for Summary Judgment upon Lynne M. Murphy, Esq., Attorney for Defendant, by depositing a copy of same in the United States mail, postage prepaid, to regular mailing address at United States Department of Justice, Post Office Box 14198, Ben Franklin Station, Washington, D.C. 20044-4198 on this the 4th day of May, 2006.

G. David Johnston
Bar No. ASB-8863-T636
Attorney for Plaintiff
Johnston, Hinesley, Flowers & Clenney, P.C.
291 North Oates Street
Dothan, Alabama 36303
334-793-1115