# EXHIBIT G

| Form 886A | Department of the Treasury - Internal Revenue Service | |
|---|---|---|
| | **Explanation of Items** | |
| Name of Taxpayer<br><br>Tim Reeves | | Month/Period<br>9-30-94,10-31-94,11-30-94,12-31-94,1-31-95,<br>09-30-95,10-31-95,11-30-95,<br>12-31-95,1-31-96,9-30-96,10-31-96,11-30-96<br>12-31-96,1-31-97 |

## ADJUSTMENT ITEM: GROSS GAMBLING WAGERS

| TAX PERIOD | WAGER AMOUNT | TAX RATE | FET TAX DUE |
|---|---|---|---|
| September 30, 1994 | $ 1,174,887.21 | 2% | $ 23,497.74 |
| October 31, 1994 | $ 2,428,100.24 | 2% | $ 48,562.00 |
| November 31, 1994 | $ 2,349,774.43 | 2% | $ 46,995.49 |
| December 31, 1994 | $ 2,428,100.24 | 2% | $ 48,562.00 |
| January 31, 1995 | $ 1,644,842.10 | 2% | $ 32,896.84 |
| September 30, 1995 | $ 1,174,887.21 | 2% | $ 23,497.74 |
| October, 31, 1995 | $ 2,428,100.24 | 2% | $ 48,562.00 |
| November 30, 1995 | $ 2,349,774.43 | 2% | $ 46,995.49 |
| December 31, 1995 | $ 2,428,100.24 | 2% | $ 48,562.00 |
| January 31, 1996 | $ 1,644,842.10 | 2% | $ 32,896.84 |
| September 30, 1996 | $ 1,174,887.21 | 2% | $ 23,497.74 |
| October 31, 1996 | $ 2,428,100.24 | 2% | $ 48,562.00 |
| November 30, 1996 | $ 2,349,774.43 | 2% | $ 46,995.49 |
| December 31, 1996 | $ 2,428,100.24 | 2% | $ 48,562.00 |
| January 31, 1997 | $   861,583.96 | 2% | $ 17,231.68 |

**BACKGROUND FACTS:** On January, 12 1997, a court ordered search and seizure warrant was executed at the taxpayer's residence as well as other locations. Exhibit A is a copy of the search warrants, affidavits used for the application of the warrants and listings of items secured pursuant to the warrants. Exhibit B is a photocopy of pictures taken during the execution of the warrants that show cash and other items consistent with illegal sports bookmaking operation. This was part of a joint investigation conducted by Federal, state, and local law enforcement agencies.

Form 886-A (Rev. 4-68)   Department of the Treasury - Internal Revenue Service
Page:

| Form **886A** | Department of the Treasury - Internal Revenue Service<br>**Explanation of Items** | Schedule |
|---|---|---|
| **Name of Taxpayer**<br><br>Tim Reeves | | Month/Period<br>9-30-94,10-31-94,11-30-94,12-31-94,1-31-95,<br>09-30-95,10-31-95,11-30-95,<br>12-31-95,1-31-96,9-30-96,10-31-96,11-30-96<br>12-31-96,1-31-97 |

As a result of the search warrant, an indictment was returned showing Tim Reeves, among others, as those charged with the operation of an illegal sports bookmaking business. This indictment is included as Exhibit C.

Based on a review of the seized evidence from this warrant, as well as taped telephone conversations pursuant to a Federally authorized wire tap, the Federal Bureau of Investigation, Racketeering Records Analysis Unit (RRAU), was able to positively identify these records as those used in a illegal bookmaking enterprise. Exhibit D for a copy of report from the RRAU. The RRAU is a well-known part of the FBI Laboratory in Washington, D.C. A copy of the Curriculum Vitae of Doug Dunlap, the supervisor in charge of this case is also attached as Exhibit E. The RRAU has extensive knowledge of and experience in bookmaking activities. Bookmakers will record each individual bet amount that they take from various customers and normally keep these records for a period of time. Based on a review of these records and wiretap information, the RRAU was able to identify them as being from a 7 day time period covering the dates December 29, 1996 through January 2, 1997. The wagers were obtained from the recorded information only. The wagers from the documents were not included in order to eliminate the possibility of duplication. A total of $ 498,437.00 in gross wagers was placed during this time period. Exhibit F shows the computation to put this 7 day wager

Form 886-A(Rev.4-68)         Department of the Treasury - Internal Revenue Service
                                                                    Page:

| Form 886A | Department of the Treasury - Internal Revenue Service **Explanation of Items** | Schedule |
|---|---|---|
| **Name of Taxpayer** Tim Reeves | | Month/Period 9-30-94,10-31-94,11-30-94,12-31-94,1-31-95, 09-30-95,10-31-95,11-30-95, 12-31-95,1-31-96,9-30-96,10-31-96,11-30-96 12-31-96,1-31-97 |

amount of $ 498,437 into a monthly sum to coincide with the Federal Excise Tax Form 730 which is computed and filed on a monthly basis.

Furthermore, in his deposition for a forfeiture case in United States District Court for the Middle District of Alabama (Southern Division), Tim Reeves has admitted to conducting an illegal gambling operation. (Exhibit G) In trial testimony, Tim Reeves admitted to being involved in this operation since 1994. (Exhibit H) Finally, Tim Reeves had pleaded guilty to charges under 18 U.S.C. 1957 for Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activities and has been sentenced to 15 months imprisonment. The specified unlawful activity in the charge is illegal bookmaking. (Exhibit I)

All of the documents and testimony from Tim Reeves indicate only wagers on football were taken. There is no evidence to support any findings of wagers being taken on basketball, baseball, hockey, etc. Furthermore, there is no evidence to support any findings that Reeves laid off bets to other bookmakers in order to make his gambling books balance.

Form 886-A(Rev.4-68)   Department of the Treasury - Internal Revenue Service

Page:

| Form 886A | Department of the Treasury - Internal Revenue Service | Schedule |
|---|---|---|
| | Explanation of Items | |
| Name of Taxpayer<br><br>Tim Reeves | | Month/Period<br>9-30-94,10-31-94,11-30-94,12-31-94,1-31-95,09-30-95,10-31-95,11-30-95,12-31-95,1-31-96,9-30-96,10-31-96,11-30-96 12-31-96,1-31-97 |

**LAW AND GOVERNMENT POSITION:** The first element of an illegal wagering case is to prove that the person is in the business of accepting wagers. Section 4401 of the Internal Revenue Code imposes a 2 percent tax on wagers placed in states where wagers are not authorized. The Code further states that the wager will include all charges incident to the placing of such wager. The person subject to the tax is defined as the person in the business of accepting wagers. Treasury Regulation 44.4401-2, provides that every person engaged in the business of accepting wagers with respect to a sporting event is liable for the tax on any such wager accepted by him. A person is engaged in the business of accepting wagers if he makes it a practice to accept wagers with respect to which he assumes the risk of profit or loss depending upon the outcome of the event with respect to which the wager is accepted. Treasury Regulation 44.4401-3 provides that the tax attaches when a person engaged in the business of accepting wagers with respect to a sporting event accepts a wager from a bettor. In the case of a wager on credit, the tax attaches whether the amount of the wager is actually collected from the bettor.

The Government would contend in this instant case, it has been proven that the taxpayer is in the business of accepting wagers as specified in Section 4401 of the Internal Revenue Code. This conclusion can be reached based on the taxpayer's arrest

Form 886-A(Rev.4-68)   Department of the Treasury - Internal Revenue Service

Page:

| Form 886A | Department of the Treasury - Internal Revenue Service<br>**Explanation of Items** | Schedule |
|---|---|---|
| **Name of Taxpayer**<br><br>Tim Reeves | | Month/Period<br>9-30-94,10-31-94,11-30-94,12-31-94,1-31-95,09-30-95,10-31-95,11-30-95,12-31-95,1-31-96,9-30-96,10-31-96,11-30-96,12-31-96,1-31-97 |

and subsequent guilty plea as well as his trial and deposition testimony. It was also proven based on the seized records obtained from the taxpayer and his employees, which the RRAU was able to identify as bookmaking records. Wire tap information further shows the taxpayer to be in the business of accepting wagers. Copies of all of the pertinent documents to support this finding are attached to this report.

The second element of an illegal wagering case is to identify the volume of wagers accepted. The size of the gross receipts of an illegal sports bookmaker is seldom available except for a short period of time. They will generally cover not more than one week of operations. This is because sports bets are traditionally made on credit, and settlement takes place with the bettor each week. After settlement, the sports bookmaker destroys all records except for the amount outstanding on open accounts. Section 4403 of the Internal Revenue Code requires those persons liable for tax under Section 4401, in addition to maintaining records required by Section 6001(a), also keep a daily record of wagers. Citing Lucia vs. United States, 474 f. 2d 565 (5th Circuit 1973); United States vs. Firtel, 446 f. 2d 1005 (5th Cir., 1971); Webb vs. Commissioner, 394 f. 2d 366, 377 (5th Cir., 1968); the court in Waters vs. United States, (80-2 USTC Paragraph 16,352) stated: "Where a taxpayer has failed to maintain adequate records, the IRS may determine his tax liability by any reasonable method, including

| Form 886A | Department of the Treasury - Internal Revenue Service  Explanation of Items | Schedule |
|---|---|---|
| Name of Taxpayer  Tim Reeves | | Month/Period  9-30-94,10-31-94,11-30-94,12-31-94,1-31-95, 09-30-95,10-31-95,11-30-95, 12-31-95,1-31-96,9-30-96,10-31-96,11-30-96 12-31-96,1-31-97 |

extrapolations." The same conclusion was reached United States vs. Miller, *(79-2 USTC Paragraph 16,318, Page 7938 (N.D. Tex., 1979)* citing United States vs. Firtel, *supra* and Pinder vs. United States, *330 f. 2d 119 (C.A. 5, 1964)* when it stated: "It is settled that the Government may assess wagering tax on the basis of projections and extrapolations from wagering data relating to specific time periods. In such cases where bookkeeping by the taxpayer is almost never either accurate or comprehensive, this as a practical matter is the only way that the tax can be assessed; a contrary rule would permit evasion of tax liability simply by destruction of records."

In instances where required records are not maintained and assessments are made by other reasonable methods, a taxpayer cannot expect to defeat the assessment through uncorroborated oral testimony. As stated by the court in Alabama Power Company vs. United States, *U.S. District Court, Northern District of Alabama, 85-1 USTC paragraph 16,432* citing Griffin vs. United States, *supra*, Carson vs. United States, *561 f. 2d 693, 699 (5th Cir., 1977)*; and Webb vs. Commissioner, *supra*: "... a taxpayer cannot meet his burden of proving that an assessment is wrong, or the correct method he owes, solely by uncorroborated oral testimony. The basis or rationale for the requirement of adequate record keeping is to keep the taxpayer from being able to meet his burden of proof by

| Form 886-A (Rev.4-68) | Department of the Treasury - Internal Revenue Service |
|---|---|
| | Page: |

| Form 886A | Department of the Treasury - Internal Revenue Service | Schedule |
|---|---|---|
| | Explanation of Items | |
| Name of Taxpayer<br><br>Tim Reeves | | Month/Period<br>9-30-94,10-31-94,11-30-94,12-31-94,1-31-95,<br>09-30-95,10-31-95,11-30-95,<br>12-31-95,1-31-96,9-30-96,10-31-96,11-30-96<br>12-31-96,1-31-97 |

casual recollection. Put another way, where a taxpayer fails to keep records, he cannot make them up by use of oral testimony."

The use of projections is well-established in case law. Such methods include using short-term periods determined from seized records or other sources as a basis for determining wagers over an extended period. In Lucia vs. United States, *474f. 2d 565 (5th Cir., 1973)*; annual wagers of $5,612,100 were computed for a 4 ½ year period based on the seizure of one day's betting slips totaling $28,780. The case was remanded to the District Courts solely for the purpose of giving Lucia the opportunity to refute the IRS determination. As stated by the Court, "In this suit for injunctive relief, the taxpayer, Lucia, will have to prove his case upon remand, and to the extent of our holding goes no further than to give him the opportunity." In the case of Pinder vs. United States, *330f. 2d 119 (C.A. 5, 1964)* an assessment was upheld where; "... the taxes here involved were computed by taking the total wagers on the day of the raid, arrived at by adding the total amount of the lottery tickets found on the premises on that day and projecting that amount back for the previous 62 weeks..." A similar determination was reached in the case of United States vs. Firtel, *446f. 2d 1005 (5th Circuit 1971)*. The court stated; "The taxpayer was under duty to keep adequate records of the wagers he received. When, contrary to this legislative mandate, a taxpayer fails to keep adequate records, the

| Form 886A | Department of the Treasury - Internal Revenue Service | Schedule |
|---|---|---|
| | Explanation of Items | |
| Name of Taxpayer

Tim Reeves | | Month/Period
9-30-94,10-31-94,11-30-94,12-31-94,1-31-95, 09-30-95,10-31-95,11-30-95, 12-31-95,1-31-96,9-30-96,10-31-96,11-30-96 12-31-96,1-31-97 |

Commissioner is authorized to reconstruct the tax base by any reasonable method." In the case of William Dark vs. United States, *81-1 USTC paragraph 16,360 (9th Cir., 1981),* based on data collected over a three day span, the Internal Revenue Service projected wagers and made assessments over an extended period.

In this instant case, the taxpayer has failed to provide any records in which a precise assessment of tax can be made. Based on this fact, the Government has relied on the wire tap information of 7 days. The Government took this evidence and projected it over the football season, which ran from September through January each year. The Government would also offer that the records for this 7-day time period are an accurate reflection of the taxpayer's entire season of wagering.

The final part of the second element of a wagering case is the inclusion of all amounts involved in a wager. Under Section 4401(b) of the Internal Revenue Code, the total amount of wagers subject to the tax under Section 4401(a) shall include all amounts incident to the placing of the wager. This means the tax is figured on the total amount at risk by the bettor. Reeves has testified that there was a 10% "vigorish" or "juice" on each wager placed. Thus, if the bettor were to wager $100 on a game, the bettor had a total amount of $110 at risk. A winning wager would pay $100, while a losing wager

Form 886-A(Rev. 4-68)    Department of the Treasury - Internal Revenue Service

Page:

| Form 886A | Department of the Treasury - Internal Revenue Service<br>**Explanation of Items** | Schedule |
|---|---|---|
| **Name of Taxpayer**<br><br>Tim Reeves | | Month/Period<br>9-30-94,10-31-94,11-30-94,12-31-94,1-31-95,<br>09-30-95,10-31-95,11-30-95,<br>12-31-95,1-31-96,9-30-96,10-31-96,11-30-96<br>12-31-96,1-31-97 |

would cost the bettor $110. The wagers, as computed by RRAU, have been increased 10% to account for statute under Section 4401(b).

The third and final element of an illegal wagering case is to identify the time period of operation. The Government would contend that it has sufficient evidence to determine that the taxpayer was accepting illegal wagers from the fall of 1994 to January 1997. The starting point of September 1994 was determined based on Reeves' own testimony, a copy of which is attached. Based on this information, this Revenue Agent used the beginning of the football season for 1994, i.e., September, as the initial month of the tax liability. The last month of the tax liability is January 1997 as this is the date of the taxpayer's arrest for this activity.

**TAXPAYER'S POSITION:** None given at this time.

**CONCLUSION:** Based on the above facts and law, the Government would submit that they have met their burden of proof in making an accurate estimate of the taxpayer's illegal wagering gross receipts.

| Form 886A | Department of the Treasury - Internal Revenue Service<br>Explanation of Items | Schedule No. |
|---|---|---|
| Name of Taxpayer<br><br>Tim Reeves | | Year/Period<br>9-30-94,10-31-94,11-30-94,12-31-94,1-31-95,<br>9-30-95,10-31-95,11-30-95,12-31-95,1-31-96,<br>9-30-96,10-31-96,11-30-96,12-31-96,1-31-97 |

## ADJUSTMENT ITEM : CIVIL FRAUD PENALTY

| PERIOD: | Amount: |
|---|---|
| September 30, 1994 | $ 17,623.46 |
| October 31, 1994 | $ 36,421.50 |
| November 30, 1994 | $ 35,246.62 |
| December 31, 1994 | $ 36,421.50 |
| January 31, 1995 | $ 24,672.63 |
| September 30, 1995 | $ 17,623.31 |
| October 31, 1995 | $ 36,421.50 |
| November 30, 1995 | $ 35,246.62 |
| December 31, 1995 | $ 36,421.50 |
| January 31, 1996 | $ 24,672.63 |
| September 30, 1996 | $ 17,623.31 |
| October 31, 1996 | $ 36,421.50 |
| November 30, 1996 | $ 35,246.62 |
| December 31, 1996 | $ 36,421.50 |
| January 31, 1997 | $ 12,923.76 |

**LAW AND GOVERNMENT POSITION:** Section 6651(a) of the Internal Revenue Code sets forth the penalties for the filing of delinquent returns. Section 6651(f) states, "if any failure to file any return is fraudulent, paragraph (1) of subsection (a) shall be applied -- by substituting "15 percent" for "5 percent" each place it appears, and by substituting "75 percent" for "25 percent". Furthermore, Section 6663(a) of the Internal Revenue Code states, "If any part of any underpayment of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 75 percent of the portion of the underpayment which is attributable to fraud."

Form 886-A(Rev.4-68)   Department of the Treasury - Internal Revenue Service

Page:

| Form 886A | Department of the Treasury - Internal Revenue Service | Schedule No. |
|---|---|---|
| Name of Taxpayer | Explanation of Items | |
| Tim Reeves | | Year/Period 9-30-94,10-31-94,11-30-94,12-31-94,1-31-95, 9-30-95,10-31-95,11-30-95,12-31-95,1-31-96, 9-30-96,10-31-96,11-30-96,12-31-96,1-31-97 |

Section 6663(b) of the Internal Revenue Code states, "If the Secretary establishes that any portion of an underpayment is attributable to fraud, the entire underpayment shall be treated as attributable to fraud, except with respect to any portion of the underpayment which the taxpayer establishes (by a preponderance of the evidence) is not attributable to fraud."

Fraud is generally considered to be the intentional wrongdoing, involving an element of deception, with the specific purpose of avoiding tax. Civil fraud is defined as the intentional wrongdoing designed to evade a tax that the taxpayer believed to be owing. Thus, mere negligence or ignorance of the law does not constitute fraud. Since direct proof of a taxpayer's fraudulent intent is rarely available, circumstantial evidence and reasonable inferences may prove fraud. The courts have developed a number of objectives or "badges" which tend to establish fraud, including: understatement of income; inadequate records; implausible or inconsistent explanations of behavior; failure to cooperate with the examining agent; concealment of assets; engaging in illegal activities; dealing in cash.

In this instant case, there are many of the above elements present to establish the imposition of the fraud penalty. First, it has been established that the taxpayer

Form 886-A(Rev.4-68)   Department of the Treasury - Internal Revenue Service

Page:

| Form 886A | Department of the Treasury - Internal Revenue Service | Schedule No. |
|---|---|---|
| Name of Taxpayer  Tim Reeves | Explanation of Items | Year/Period 9-30-94,10-31-94,11-30-94,12-31-94,1-31-95, 9-30-95,10-31-95,11-30-95,12-31-95,1-31-96, 9-30-96,10-31-96,11-30-96,12-31-96,1-31-97 |

consistently failed to report substantial amounts of income over a number of years, which is well established by the courts as evidence of fraudulent intent. (Gromacki v. Commissioner 66-1 USTC 9414, 361 F. 2d 727 (7th Cir. 1966), affg. A Memorandum Opinion of this Court (Dec. 27,039(M). Romer v. Commissioner (Dec. 22,586), 28 T.C. 1228 (1957). The taxpayer received unreported illegal gambling income in the years 1994 through and including 1997 which the Government would contend is a substantial time period to meet this element of the Civil Fraud Penalty.

Secondly, the Government has proved that the taxpayer failed to keep adequate records, i.e., no evidence was presented by the taxpayer that he kept any records at all to properly monitor the income of business. The main reason for the taxpayer doing this was to conceal the business from the law enforcement authorities. This is further proof of fraudulent intent. (Parsons v. Commissioner (Dec. 27,196), 43 T.C. 378 (1964).

Thirdly, the taxpayer failed to disclose his illegal wagering income to the individual who prepared his tax returns, which is further evidence of intent to conceal income and evade taxes. (Farber v. Commissioner (Dec 27,201), 43 T.C. 407 (1965).

Form 886-A (Rev. 4-68)   Department of the Treasury - Internal Revenue Service

Page:

| Form 886A | Department of the Treasury - Internal Revenue Service<br>**Explanation of Items** | Schedule No. |
|---|---|---|
| **Name of Taxpayer**<br><br>**Tim Reeves** | | Year/Period<br>9-30-94,10-31-94,11-30-94,12-31-94,1-31-95,<br>9-30-95,10-31-95,11-30-95,12-31-95,1-31-96,<br>9-30-96,10-31-96,11-30-96,12-31-96,1-31-97 |

Fourthly, in this instant case it has been proven that the taxpayer participated in an illegal activity, as he pleaded guilty of operating an illegal bookmaking operation. Fifthly, the taxpayer ran his operation using substantial amounts of cash as a means to conceal this activity from law enforcement authorities. Both of these indicators have been used to uphold the fraud penalty in previous court cases. (Bradford v. Commssioner, 86-2 USTC 9602, 796 F.2d 303, 307-308 (9th Cir. 1986), affg. Dec. 41,615(M), T.C. Memo. 1984-601; Recklitis v. Commissioner (Dec. 45,154), 91 T.C. 874,910 (1988).

Based on the above facts, it is the Government's contention that the fraudulent failure to file penalty under Section 6651 should be applied in this case.