IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| TIMOTHY JOE REEVES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:05-CV-00542-MHT |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OF LAW IN SUPPORT OF
MOTION OF UNITED STATES FOR SUMMARY JUDGMENT

_____The defendant, United States of America, respectfully submits its Memorandum

of Law In Support of Its Motion for Summary Judgment.  In support of its motion, the

United States states the following:

The plaintiff, Timothy Joe Reeves, erroneously claims that his civil tax liabilities

were settled as part of a plea agreement and, therefore, he is not obligated to pay excise

taxes, including penalties and interest, assessed against him for the periods covering 1994

through 1997.  The excise tax assessment is approximately $2 million, plus interest

thereon as is required by law.  Alternatively, and despite Reeves' claims of a purported

settlement, he further claims that he is not liable for the assessment because it is

erroneous and/or grossly overstated.  The United States disputes Reeves' contentions.

Neither the facts nor the law support a finding that Reeves is not obligated to pay the

excise tax assessment, plus interest thereon.  Accordingly, summary judgment should be

granted in favor of the United States and a judgment entered in its favor for the sum of $1,967,844, plus interest thereon as is required by law.

## I.    SUMMARY JUDGMENT STANDARDS.

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"[1]  The movant seeking summary judgment must inform the Court of the basis for the motion and, thereafter, the burden shifts to the non-moving party to show why summary judgment is not appropriate.[2]  The nonmovant must respond to the motion for summary judgment by setting forth specific facts showing that there is a genuine issue for trial and "may not rest upon the mere allegations or denials of the pleadings."[3]

"[A]t the summary-judgment stage, [the Court] is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial."[4]  In deciding the motion, the Court "must view the evidence in the light

---

[1]  See e.g., Nobles v. Rural Community Ins. Services, 303 F. Supp.2d 1292, 1294 (M.D. Ala. 2004), aff'd. 116 Fed. Appx. 253 (11th Cir. 2004) (quoting, Fed. R. Civ. P. 56(c)).

[2]  Nobles, 303 F. Supp.2d at 1294 (citing, Fed. R. Civ. P. 56, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)); Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-1117 (11th Cir. 1993) ("discussing burden-shifting under Rule 56").

[3]  Nobles, 303 F. Supp.2d at 1294 (quoting, Fed. R. Civ. P. 56(e)).

[4]  Nobles, 303 F. Supp.2d at 1294 (citing, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).

1650745.1                                          2

most favorable to the non-moving party and draw all reasonable inferences in favor of that party."[5]

## II.    PLEA AGREEMENT DID NOT SETTLE OR COMPROMISE REEVES' CIVIL TAX LIABILITIES.

The written Plea Agreement does not provide for any settlement or compromise of Reeves' civil tax liabilities.  Reeves' claim that his civil tax liabilities were resolved by his Plea Agreement should be rejected for four reasons.  First, the written Plea Agreement is a clear and unambiguous contract which, on its face, does not mention or purport to settle or compromise Reeves' civil tax liabilities.  In turn, because the Plea Agreement is clear and unambiguous, the intent of the parties is appropriately determined only from the "four corners" of the document and the court should not consider extrinsic evidence. Second, there was no meeting of the minds over the terms that would have been necessary to effectuate a settlement or compromise of Reeves' civil liabilities.  Third, the United States Attorney lacked authority to settle Reeves' civil tax liabilities and thus any agreement to do so would be unenforceable.  Fourth, the case in Creel v. Commissioner, 419 F.3d 1135 (11th Cir. 2005) does not support Reeves' contention because, here, Reeves was not prosecuted for tax offenses and there was no order to pay tax losses as part of his criminal plea.  Thus, there was no occasion for the United States Attorney to have

---

[5] Nobles, 303 F. Supp.2d at 1294-1295 (citing, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

resolved Reeves' civil tax liabilities as part of any restitution payment made in the criminal case.

        **1.**      <u>**Written Plea Agreement Is Clear and Unambiguous.**</u>  A plea agreement is a contract, and the interpretation of its terms is governed by contract law principles and, therefore, it terms "should be interpreted in accord with what the parties intended."[6] <u>United States v. Rubbo</u>, 396 F.3d 1330, 1334 (11th Cir. 2005) (citations omitted).  When an agreement is clear and unambiguous, the Court is limited to interpreting the language of the agreement[7] and may not resort to extrinsic materials[8] in order to discern the parties'

---

[6]  <u>United States v. Barrow</u>, 400 F.3d 109, 117 (2d Cir. 2005) (The interpretation of a contract is generally a question of law and, therefore is reviewed <i>de novo</i>); <u>United States v. Fitch</u>, 282 F.3d 364, 366 (6th Cir. 2002) ("The interpretation and construction of a written contract . . . are matters of law, thus allowing <i>de novo</i> review").

    Whether the government has breached a plea agreement is a question of law reviewed <i>de novo</i>.  <u>United States v. Copeland</u>, 381 F.3d 1101, 1104 (11th Cir. 2004) (<u>citing</u>, <u>United States v. Mahique</u>, 150 F.3d 1330, 1332 (11th Cir. 1998)).  The district court's factual findings regarding the scope of a plea agreement, including the government's promises, will be set aside only if they are clearly erroneous.  <u>Copeland</u>, 381 F.3d at 1105 (<u>Raulerson v. United States</u>, 901 F.2d 1009, 1012 (11th Cir. 1990)).

[7]  <u>See</u> <u>e.g.</u>, <u>Beeks v. United States</u>, 2006 WL 346475 (11th Cir. 2006); <u>Marsh v. United States</u>, 2005 WL 3150509 (11th Cir. 2005); <u>Barrow</u>, 400 F.3d at 117-118 ("Where the language of a contract is unambiguous, the parties' intent is discerned from the four corners" of their agreement); <u>United States v. Weaver</u>, 905 F.2d 1466, 1472 (11th Cir. 1990) ("A basic tenet of contract law is that a written agreement which is unambiguous on its face should be interpreted and enforced accordingly").

[8]  <u>See</u> <u>e.g.</u>, <u>United States v. Leniar</u>, 111 Fed. Appx. 891, 892 (9th Cir. 2004) (Parol evidence is inadmissible to prove the existence of supplemental terms when a written agreement is "clear and unambiguous") (<u>citing</u>, <u>United States v. Ajugwo</u>, 82 F.3d 925, 928 (9th Cir. 1996)); <u>Sunrise Medical HHG, Inc. v. Health Focus of New York</u>, 2005 WL 357203, at *12 (N.D.N.Y. 2005) (Extrinsic evidence is inadmissible to "contradict the terms of a binding integrated

intent.  Copeland, 381 F.3d at 1105-1106.  "[W]hether a written agreement is ambiguous

or unambiguous on its face should ordinarily be decided by the courts as a matter of law."

Weaver, 905 F.2d at 1472.[9]  When interpreting a written agreement, the terms, in the

absence of some indication that the parties intended otherwise, should be given their

"ordinary and natural meaning."  Rubbo, 396 F.3d at 1334.  The terms of an agreement

must be measured "by objective standards, not the subjective beliefs of the parties."

Weaver, 905 F.2d at 1473.[10]

     Here, the words of the written Plea Agreement are clear and unambiguous.  See

Government's Exhibit "2."  Nowhere in the Plea Agreement is there ever any mention of

Reeves' civil tax liabilities, let alone any settlement or compromise of such liabilities.

The Plea Agreement simply does not include any language that would allow one to

---

agreement or to add to the terms of a binding and completely integrated agreement") (quoting,
United States v. Rockwell Intern. Corp., 124 F.3d 1194, 1199 (10th Cir. 1997)).

    [9]  Sunrise Medical, 2005 WL 357203, at *11 (An ambiguity exists if "the terms of a
contract could suggest more than one meaning when viewed objectively by a reasonably
intelligent person who has examined the context of the entire integrated agreement and who is
cognizant of the customs, practices, usages and terminology as generally understood in the
particular trade or business").

    [10]  In interpreting plea agreements, Courts apply the following standards:  **(1)** a "hyper-
technical reading of the written agreement" or "a rigidly literal approach in the construction of
language" should be avoided; **(2)** "the written agreement should be viewed 'against the
background of the negotiations' and should not be interpreted to 'directly contradic[t] [an] oral
understanding;'" **(3)** extrinsic evidence should be considered only when the language of the
agreement is ambiguous or government overreaching is alleged; and **(4)** any "ambiguous" terms
should be "read against the government."  Copeland, 381 F.3d at 1105 (citations omitted).  See
also, United States v. Two Parcels of Real Property Located at 101 North Liberty Street and
Liberty Street in Clanton, Chilton County, Ala., 80 F. Supp.2d 1298, 1304 (M.D. Ala. 2000).

conclude that a settlement or compromise of Reeves' civil tax liabilities had been effectuated by the parties.

In fact, the Plea Agreement contains an integration clause in which the parties agreed that "no additional promises, agreements or conditions [were] entered into other than those set forth in [the] agreement, and that [the] agreement supersedes any earlier or other understanding or agreement." See Government's Exhibit "2," at pp. 3 and 11, § III(K)(2); Government's Statement of Material Facts ("GSMF"), at ¶ 15. The integration clause in the Plea Agreement confirms the parties' agreement and understanding that the written Plea Agreement contained all of the government's promises and that no other understanding existed.[11] When an integration clause is included in a written plea agreement, any understandings falling outside that agreement are unenforceable. In re Altro, 180 F.3d at 375.

Without any express provision in the Plea Agreement addressing Reeves' civil tax liabilities, Reeves and his counsel, Redden, have no legal basis for suggesting that his

---

[11]    See e.g., Beeks, 2006 WL 346475; United States v. Lenoci, 377 F.3d 246, 258 (2d Cir. 2004) (Where a plea agreement contains an integration clause "expressly disavowing the existence of any understandings other than those set forth in the plea agreement, a defendant may not rely on a purported implicit understanding in order to demonstrate that the [g]overnment is in breach" (citation omitted)); Beasley v. Stewart, 2001 WL 1664204 (9th Cir. 2001); In re Altro, 180 F.3d 372, 373 (2d Cir. 1999) (An integration clause generally is defined as "a provision stating that there are no promises or understandings between the parties other than those explicitly set forth in the written agreement"); Rockwell Intern., 124 F.3d at 1199-1200 ("[E]xtrinsic evidence may not be admitted to contradict the terms of a binding integrated agreement or to add to the terms of a binding and completely integrated agreement" (quoting, Restatement (Second) of Contracts, §§ 215, 216)).

civil tax liabilities were settled as part of his guilty plea. The silence of the Plea

Agreement establishes that the parties never intended on settling or compromising any of

Reeves' civil tax liabilities. See discussion, infra, at pp. 9-11. In this respect, the Plea

Agreement makes no references to taxes at all. The Plea Agreement also makes no

mention of the type of taxes (e.g., income, excise, employment) that Reeves *now* claims

were settled. See Government's Exhibit "2." Nor does the Plea Agreement make any

mention of the amount of the tax liabilities that Reeves claims were settled. See

Government's Exhibit "2."

Moreover, as can be seen from the language of the Plea Agreement, the parties

certainly knew how to specify the terms of a settlement when they wanted to do so. This

conclusion is evident from the detailed and precise language employed in the provisions

evidencing the parties' intent to settle the matters involving the properties subject to

forfeiture.[12] See Government's Exhibit "2," at pp. 4-5; GSMF, at ¶ 13.

In support of his "settlement" contentions, Reeves makes two arguments, both of

which are equally meritless. First, he claims that the provision in the Plea Agreement,

which provides for no further criminal prosecutions, means that the parties agreed that he

---

[12] "A forfeiture provision in a plea agreement is not a plea to a substantive charge, but a sanction to which the parties agree as a result of the defendant's plea." United States v. Boatner, 966 F.2d 1575, 1581 (11th Cir. 1992). The forfeiture provision contained in Reeves' Plea Agreement pertained to properties involved with the money laundering offense. Forfeitures of property are not payments of civil tax liabilities. An agreement to forfeit property is not an agreement to settle or compromise a criminal defendant's civil tax liabilities. See e.g., GSMF, at ¶¶ 13-14 and 20-21.

would have no further civil tax liabilities.  Second, he claims the Court should consider

extrinsic evidence (e.g., Affidavit of former AUSA Ashton Holmes Ott) and that this

affidavit supports his contentions.

The provision of the Plea Agreement upon which Reeves relies reads:

### G.    No Further Prosecution

The United States further agrees that in return for the defendant's compliance with the terms of this agreement there will be no further federal criminal prosecution of the defendant in the Middle District of Alabama based on the information and evidence now available to the United States regarding the defendant's involvement with violations of 18 U.S.C. § 1955, 1956, and 1957 or any federal tax provision.

See Government's Exhibit "2," at pp. 3 and 8, § III(G); GSMF, at ¶ 42.

Reeves' reliance on such provision must fail.  When the provision is examined in

the context of the entire integrated provision, together with the words included in such

provision being interpreted in their ordinary and usual meaning, the provision clearly and

unambiguously is intended to reflect the parties' agreement that there would be no further

criminal prosecution of Reeves for any tax offenses committed in connection with his

illegal wagering activities, based on information and evidence then available to the

government.  The provision makes no mention of any agreement to settle Reeves' civil

tax liabilities.

Reeves also attempts to rely on the affidavit of the former AUSA, Ashton Holmes

Ott, to give credence to his settlement claims.  However, consideration of such extrinsic

evidence is inappropriate in light of the clear and unambiguous language of the written

Plea Agreement.  Even if the Court determines consideration of such extrinsic evidence is permissible, the government is prepared to offer the testimony of Charles Niven, the retired First Assistant United States Attorney.  Niven was responsible for handling and supervising the criminal prosecution of Reeves in the proceedings, United States v. Billy Joe Reeves, et al., Case No. 99-CR-0013-S (M.D. Ala.).  See GSMF, at ¶¶ 5 and 6. Niven's duties included negotiating, drafting and approving Reeves' Plea Agreement. See GSMF, at ¶¶ 6 and 19.  Niven's duties also included supervising the AUSAs, including former AUSA Ashton Holmes Ott, who assisted in the criminal prosecution of Reeves.  See GSMF, at ¶ 6.  If called to testify, Niven is expected to offer testimony that would be consistent with the terms of the written Plea Agreement.  See Government's Exhibit "A" for Declaration of Charles Niven.

Here, the written Plea Agreement negates the existence of any promise of settlement or compromise of Reeves' civil tax liabilities.  The Court cannot enforce an agreement that was never agreed upon with specificity.  In re Grand Jury Proceedings, 819 F.2d 984, 987 (11th Cir. 1987).  Further, inasmuch as a settlement was not expressly included in the Plea Agreement, Reeves cannot now "unilaterally modify" the agreement to preclude the IRS from assessing the taxes against him "on the basis of an uninduced, mistaken belief that he had bargained for" the compromise or settlement of his civil tax liabilities.  In re Altro, 180 F.3d at 377.  "When an agreement exists, its terms are important; when no agreement exists, as in this case, no terms exist."  In re Grand Jury Proceedings, 819 F.2d at 988 (Judge Hatchett's concurrence).

2.    No "Meeting of the Minds" Occurred Beyond the Plea Agreement.

The requisite elements for a valid contract are:  "an offer and an acceptance,

consideration, and mutual assent to terms essential to formation of a contract."  See e.g.,

Ex parte Steadman, 812 So.2d 290, 293 (Ala. 2001) (citations omitted).  Applying basic

contract law principles here, it is evident that there was never any "meeting of the minds"

over the essential terms necessary to effectuate a settlement or compromise of Reeves'

civil tax liabilities.

Implicit in a settlement is that the parties be aware of all essential elements of the

matter sought to be settled.  Knowledge of such essential elements is necessary for the

parties to be able to have a "meeting of the minds."  Without knowledge of the essential

elements of a tax liability (e.g., types and amount of taxes), no settlement of such liability

can be effectuated.

At the time of entry of the guilty plea, the IRS had made no determinations of the

specific sum of taxes, including penalties and interest, owed by Reeves in connection

with the illegal wagering activities conducted by him during 1994 through 1997.

See GSMF, at ¶¶ 22-34 and 37-38.  The IRS had not even made any determination of the

type of taxes (e.g., income, excise, employment) for which Reeves could potentially be

liable.  See GSMF, at ¶¶ 22-34 and 37-38.  No such determinations were made any earlier

than July, 2000.  See GSMF, at ¶¶ 22-34 and 37-38.  The offenses for which Reeves was

indicted did not include tax-related offenses.  See GSMF, at ¶ 5.  The amount of Reeves'

civil tax liabilities was irrelevant to a prosecution of the offenses for which Reeves was

indicted in February, 1999 and the money laundering offense to which he ultimately pleaded in October, 1999.  See GSMF, at ¶ 39.  The amount of taxes was irrelevant to any agreement to decline to further prosecute Reeves for any criminal tax offenses.[13]  See GSMF, at ¶ 42.  The amount of taxes, plus penalties and interest thereon, was neither acknowledged, conclusively established nor finally determined before the Plea Agreement was entered into by the parties.

Until there was a definitive determination or adjudication of the amount of Reeves' tax liabilities, the parties lacked a major element essential to effectuating a settlement or compromise of Reeves' civil tax liabilities.  Where there is no meeting of the minds, coupled with the absence of any express language in the written Plea Agreement incorporating any such settlement, the Court should decline to imply an agreement to settle Reeves' civil tax liabilities.

---

[13] See e.g., United States v. Minneman, 143 F.3d 274, 279 (7th Cir. 1998) ("The amount of taxes owed is irrelevant to a prosecution for tax fraud" (citing, United States v. Marashi, 913 F.2d 724, 736 (9th Cir. 1990)); United States v. Green, 735 F.2d 1203, 1206 (9th Cir. 1984) ("The amount of taxes owed is ordinarily not determined in a criminal proceeding, . . . but in a separate civil proceeding or by the defendant's acquiesce in the government's assessment of deficiency"); Gnifkwoski v. United States, 2004 WL 569534, at *4-*5 (D. Minn 2004) ("[T]he precise amount [of taxes] due was not an element of the criminal offense.  Because that sum was not "actually and necessarily" resolved as part of the criminal case, neither side is precluded from relitigating the amount in a civil proceeding. . . .  The plea agreement did not establish the tax liability"); Posnanski v. Commissioner, T.C. Memo 2001-26 (Disposition of the taxpayer's criminal case, by plea agreement, does not bar the IRS from determining the civil tax liabilities due and owing from the taxpayer).

**3.** **The United States Attorney Was Without Authority To Settle Reeves'**

**Civil Tax Liabilities.**  A binding settlement of Reeves' civil tax liabilities is not present

despite Reeves' purported belief that he agreed to such a settlement.  A settlement or

compromise of any disputed tax liabilities is governed by IRC §§ 7121 and 7122, 26

U.S.C.  These statutes authorize the Secretary of the Treasury or an authorized delegate to

settle or compromise any tax disputes arising under the internal revenue laws.  Klein v.

Commissioner, 899 F.2d 1149, 1152 (11th Cir. 1990).  The requirements set forth in those

statutes and the accompanying regulations are exclusive and strictly construed.  Klein,

899 F.2d at 1152.[14]

Reeves claims that the written Plea Agreement was intended to relieve him of his

civil tax liabilities for the periods covering 1994 through 1997.  The government disputes

Reeves' contentions.  However, even if, as Reeves alleges, the United States Attorney

intended to discharge Reeves of his civil tax obligations, the United States Attorney

---

[14]  See also, Bowling v. United States, 510 F.2d 112, 113 (5th Cir. 1975) ("Because of
th[e] exclusive method [provided by IRC §§ 7121 and 7122], no theory founded upon general
concepts of accord and satisfaction can be used to impute a compromise settlement" (citations
omitted)); Gandy Nursery, Inc. v. United States, 2000 WL 33988216 (E.D. Tex. 2000) (The
"stringent procedures" set forth in the IRC must be strictly complied with to have an enforceable
settlement"); In re Mungan, 292 B.R. 613, 619 (Bankr. E.D. Tenn. 2002) ("An informal
'agreement' does not constitute a compromise under the IRC and does not bind the government"
(citations omitted)); Palladin Precision Products, Inc. v. Commissioner, T.C. Memo 1993-3 (As a
matter of law, the United States Attorney and AUSA is without authority to bind the IRS and,
therefore, the plea agreement, even accepting the taxpayer's interpretation, cannot effect a valid
compromise of his civil tax obligations); Wagner v. Commissioner, T.C. Memo 1990-443 (Even
if the United States Attorney intended to relieve the taxpayer of his civil tax liabilities, he lacked
the authority to compromise the tax liabilities and, therefore, the provision in the plea agreement
has no effect).

lacked the authority to compromise Reeves' civil tax liabilities and, as a result, any such

agreement is unenforceable. Klein, 899 F.2d at 1153.[15]

      **4.**     **Creel Does Not Apply.** This case is distinguishable from Creel v.

Commissioner, 419 F.3d 1135 (11th Cir. 2005). In Creel, the Eleventh Circuit found that

satisfaction of a taxpayer's restitution obligation also discharged his civil tax obligations.

Creel, 419 F.3d at 1141-1142. Creel, unlike here, involved the criminal prosecution of

tax offenses. Creel, 419 F.3d at 1137. The plea agreement in Creel, unlike the one here,

specifically required Creel to file returns for 1985 through 1991 and to make full

restitution for the tax losses resulting from his failure to file such returns. Creel, 419 F.3d

at 1137.

      Creel's returns for 1986 through 1991 showed unpaid income taxes of $83,830.

Creel, 419 F.3d at 1137. As a condition of Creel's probation, he was ordered to make

restitution to the IRS for the years 1986 through 1991 in the amount of "$83,830 *plus any*

*applicable penalties and interest*." Creel, 419 F.3d at 1137-1138. After Creel paid

restitution, totaling $83,830, the United States Attorney's Office filed a Satisfaction of

---

[15] See also, San Pedro v. United States, 79 F.3d 1065, 1067, n. 1 and 1072 (11th Cir. 1996) (The court held that the "not to prosecute . . . for any other offenses" provision included in the plea agreement did not include a promise not to deport the criminal defendant. The court further found that even if the promise of non-deportation was made, the promise could not bind the INS because the United States Attorney and AUSAs had no authority to make such a promise); United States v. Rourke, 74 F.3d 802, 810 (7th Cir. 1996) (The court found that FAA's suspension of the defendant's license did not violate his plea agreement because the United States Attorney had no authority to bind the FAA to the terms of a plea agreement).

Judgment and released the judgment lien securing Creel's restitution obligation.  Creel,

419 F.3d at 1138.  Thereafter, the IRS proposed to levy on Creel's assets to collect

additional taxes, penalties and interest, owed for 1987 through 1991.  Creel, 419 F.3d at

1138.  The Eleventh Circuit affirmed the Tax Court's refusal to sustain the IRS's

proposed levy on the grounds, in pertinent part, that "Creel's payment of $83,830 and the

U.S. Attorney's issuance of a satisfaction of judgment and release of lien settled [Creel's]

alleged civil tax liabilities."  Creel, 419 F.3d at 1139.[16]

     In affirming the Tax Court's decision, the Eleventh Circuit found that the Creel

case presented "unique facts . . . , most notably the language of the restitution judgment

and the actions of the U.S. Attorney."  Creel, 419 F.3d at 1140.  "The restitution amount

specifically included the civil penalties that the Commissioner now seeks to recover."

Creel, 419 F.3d at 1140.  The Eleventh Circuit further recognized that "because the

government elected to include [Creel's] civil tax liabilities as part of the restitution order,

when the U.S. Attorney discharged the restitution obligation, Creel's civil tax liabilities

---

[16]   The United States Attorney filed a Satisfaction of Judgment that stated, in pertinent
part, the following:

> The assessment, fine, and/or restitution imposed by the Court . . . having been paid or
> otherwise settled, the Clerk . . . is hereby authorized and empowered to satisfy the
> Judgment as to the monetary imposition only.

Creel, 419 F.3d at 1138.  The United States Attorney also recorded a Cancellation and Release
that stated, in pertinent part, that "the previously-recorded judgment lien was 'fully released,
satisfied, discharged, and cancelled' because the debt was 'paid in full.'"  Creel, 419 F.3d at 1138.

were also extinguished." <u>Creel</u>, 419 F.3d at 1140.  As a result, the Eleventh Circuit

concluded that "although not compelled to do so, the government discharged Creel's civil

tax liabilities as part of the criminal case." <u>Creel</u>, 419 F.3d at 1141.

In deciding <u>Creel</u>, the Eleventh Circuit also affirmed the Tax Court's conclusion

that the United States Attorney had the authority to settle Creel's civil tax liabilities as

part of the criminal case, notwithstanding the statutory mandates for settling or

compromising tax cases, as set forth in IRC §§ 7121 and 7122.  <u>Creel</u>, 419 F.3d at 1139

and 1142.  In support of its conclusion, the Eleventh Circuit stated, in pertinent part, the

following:

> Under the unique facts of this case, we are not persuaded by the
> Commissioner's position.  Importantly, the Commissioner concedes that the U.S.
> Attorney had authority to settle Creel's criminal restitution obligation.  And here
> the restitution obligation was drafted such that Creel's civil tax liabilities were
> inextricably intertwined with his criminal tax liabilities, which together formed a
> condition of his probation.  Because the U.S. Attorney had the authority to settle
> the criminal side of the case, and the civil penalties were consolidated within the
> criminal case, the U.S. Attorney acted within the scope of his authority.

<u>Creel</u>, 419 F.3d at 1142 (citation omitted).

The unique set of facts present in <u>Creel</u> are not present here.  There was no

criminal prosecution of Reeves for tax offenses.  There was no discussion by or among

the parties of any taxes, including penalties and interest, that may be due and owing by

Reeves for the periods covering 1994 through 1997.  Reeves' Plea Agreement contained

no agreement that required him to file any tax returns, including excise tax returns, for the

periods covering 1994 through 1997 and/or to pay restitution to the IRS for any taxes,

including penalties and interest, that may be due and owing for such periods.

The Plea Agreement is silent on any issues involving Reeves' civil tax liabilities, including but not limited to any settlement or compromise thereof. There simply is no provision in the agreement that allows one to conclude that Reeves' civil tax liabilities were compromised or settled. There also is simply no provision that bars the IRS from assessing and/or collecting any federal taxes, including penalties and interest, due and owing by Reeves for the periods covering 1994 through 1997 and/or from relying on, or using, Reeves' testimony in doing so. Because no promises, as alleged by Reeves, exist, Reeves' claims should be dismissed.

## III.    REEVES' TESTIMONY IS NOT ENTITLED TO EXCLUSIONARY PROTECTION.

Reeves claims that the Plea Agreement precludes the IRS from relying on, or using, any prior testimony given by him, at trial or by deposition, in order to assess any excise taxes, including penalties and interest, against him for the periods covering 1994 through 1997. See GSMF, at ¶¶ 43-47. In support of Reeves' contentions, he attempts to rely on certain select provisions of the Plea Agreement.

Reeves' contentions must be rejected. His interpretations of the selected provisions are not supported by the plain language of the Plea Agreement. His interpretations also are not in accordance with the "ordinary and natural meaning" that should be given the terms and/or words that are used in the Plea Agreement. In this respect, the legislative history and the language of Rule 410 of the Federal Rules of

Evidence and Rule 11 of the Federal Rules of Criminal Procedure provide guidance and instruction on the "ordinary and natural meaning" to be given such terms and/or words.

Reeves relies on two provisions in the Plea Agreement to argue exclusionary protection applies to his trial and deposition testimony. First, Reeves relies on the following provision, setting forth Reeves' agreement to cooperate with the government:

### C.     Cooperation Agreement

1.     [Reeves] agrees to cooperate fully and testify truthfully against any and all persons as to whom he may have knowledge at grand jury, trial or whenever called upon to do so, with the exception that [he] will not be required to testify against his father, Billy Joe Reeves. . . .

2.     Provided that [Reeves] satisfies the terms of the plea agreement, any information that he truthfully discloses to the government during the course of his cooperation, concerning related offenses, will not be used against him, directly or indirectly. [Reeves] understands that this agreement does not bar his prosecution for capital felonies, perjury, false statements, and obstruction of justice.

3.     If [Reeves] has failed or should fail in any way to fulfill completely his obligations under this agreement, then the government will be released from its commitment to honor all of its obligations to him. Thus, if at any time he should knowingly and willfully withhold evidence from the government investigators or attorneys prior to or during his testimony before grand juries or in trials, then the government will be free (1) to prosecute him for perjury, false declaration, false statement, and/or obstruction of justice (18 U.S.C. Section 1621, 1623, 1001, 1503); (2) to prosecute him for all violations of federal criminal law which he has committed; (3) to use against him in all of those prosecutions and sentencings the information and documents that he has himself disclosed or furnished to the government during the course of his cooperation; (4) to recommend a maximum sentence; and (5) to seek forfeiture of any and all forfeitable properties of [Reeves]. The parties agree to submit to the court, to be decided by a preponderance of the evidence standard, the question of whether [Reeves] has breached this agreement.

See Government's Exhibit "2," at pp. 3 and 5-7, § III(C); GSMF, at ¶ 49.

1650745.1                                    17

An examination of the above provision shows that it cannot be read to preclude the IRS from relying on, or using, Reeves' testimony in order to determine, assess or collect any taxes, including penalties and interest, due from him during 1994 through 1997. Instead, a fair reading of the provision in its entirety shows that it operates to preclude the United States Attorney from using any of the statements for the purpose of prosecuting Reeves for any "related offenses." The term "offenses" used in its ordinary and usual meaning refers to "criminal offenses."[17]

Second, Reeves relies on the following provision in which he acknowledged the specific terms that would govern the inadmissibility of statements made during plea negotiations:

**K.    Scope Of The Agreement**

　　　1.    [Reeves], before entering a plea of guilty to Count One of the information currently pending against him, advises the Court that:

. . . .

　　　h.    [Reeves] further advises the Court that [Reeves] understands and has been advised that evidence of a plea of guilty, later

---

[17] The term "offense" is defined, as follows:

> A violation of the law; a crime . . . [a]lso termed *criminal offense*. . . . The terms 'crime,' 'offense,' and 'criminal offense' are all said to be synonymous, and ordinarily used interchangeably. 'Offense' may comprehend every crime and misdemeanor, or may be used in a specific sense as synonymous with 'felony' or with 'misdemeanor,' as the case may be, or as signifying a crime of lesser grade, or an act not indictable, punishable summarily or by the forfeiture of a penalty.

Black's Law Dictionary, (8th ed. 2004).

withdrawn or an offer to plead guilty to the crime charged in the Information herein, or of statements made in connection with and relevant to said plea or offer to plead, shall not be admissible in any civil or criminal proceedings against [Reeves]. However, [Reeves] does understand that evidence of a statement made in connection with and relevant to a plea of guilty, later withdrawn, or an offer to plead guilty to the crimes charged in the Information herein, is admissible in a criminal proceeding for perjury or false statement when the statement was made by [Reeves] under oath, on the court record, and in the presence of counsel.

See Government's Exhibit "2," at pp. 3 and 11, § III(K)(1)(h); GSMF, at ¶ 51.

By the plain language of the above provision, the Plea Agreement excludes, in pertinent part, statements made by Reeves "in connection with and relevant to [an] offer to plead." A fair reading of this provision shows that the provision excludes only those statements that are made *during* plea negotiations. While the above provision provides exclusionary protection, such protection is limited to only statements that were made "in the course of plea discussions." See e.g., former Fed. R. Evid. 410 and Fed. R. Cr. P. 11(e)(6) for similar language ("statements made in connection with, and relevant to," offers to plead).[18]  See also, United States v. Robertson, 582 F.2d 1356, 1365-1366 (5th

---

[18]  Since 1979, Fed. R. Evid. 410 and Fed. R. Cr. P. 11 have been amended at least twice. In 1980, the rules were amended to clarify that they applied to only statements made during "plea discussions with an attorney for the prosecuting authority" and, therefore, statements made to any law enforcement officers were not within the scope of such rules. See e.g., United States v. Stern, 2005 WL 1377851 (E.D. Pa. 2005). In 2002, the rules were amended to eliminate Fed. R. Cr. P. 11(e)(6) because it was "substantively identical" to Fed. R. Evid. 410. See e.g., United States v. Parra, 302 F. Supp.2d 226, 233, n. 6 (S.D.N.Y. 2004) (quoting, United States v. Mezzanatto, 513 U.S. 196, 199 (1995)). As a result of that amendment, Rule 11(e)(6) was eliminated and Rule 11(f) was added. Rule 11(f) simply refers to Fed. R. Evid. 410 for the rules governing "[t]he admissibility or inadmissibility of a plea, a plea discussion, and any related statement." See e.g., Parra, 302 F. Supp.2d at 233, n. 6 (citing, Fed R. Evid. 410 and Fed. R. Cr. P. 11).

Cir. 1978) (*en banc*) (interpreting the language of the provisions contained in former Fed.

R. Evid. 410 and Fed. R. Cr. P. 11(e)(6)).  The provision does not provide exclusionary

protection for any statements made after, or pursuant to, a plea agreement, such as

statements made in cooperation with the government or testifying against co-defendants

at trial.

It is a well-recognized principle that statements made after, but pursuant to, a plea

agreement, are not entitled to exclusionary protection because they are not made *during*

plea negotiations.[19]  Any statements made by Reeves during his trial and deposition

testimony are not part of plea negotiations and, therefore, fall outside the exclusionary

protection provided for under the Plea Agreement.  In addition, most of the statements

made during Reeves' trial testimony would not qualify as "statements made *during* plea

negotiations," since most of the "objectionable" statements were made in open court and

---

[19] United States v. Knight, 867 F.2d 1285, 1288 (11th Cir. 1989) (Defendant's post-arrest statements that were made after she had agreed to plead guilty were not made in the course of plea discussions and, therefore, were admissible).  See also, United States v. Marks, 209 F.3d 577, 582 (6th Cir. 2000) ("Statements made after a plea agreement is finalized are not excluded as statements made in the course of plea discussions); United States v. Bourgeois, 163 F.3d 607, 610 (9th Cir. 1998) (The exclusionary rule protects "only those statements made *during plea negotiations*, not those statements made after the finalization of a plea agreement"); United States v. Watkins, 85 F.3d 498, 500 (10th Cir. 1996) ("Statements made by a criminal defendant pursuant to, but subsequent to the finalization of, a plea agreement" are not entitled to the exclusionary protection" afforded "statements made *during* the plea negotiation process"); United States v. Lloyd, 43 F.3d 1183, 1186 (8th Cir. 1994) (Once a plea agreement is reached, statements made thereafter and pursuant to its terms are not entitled to exclusionary protection); United States v. Davis, 617 F.2d 677, 685 (D.C. Cir. 1979) (Grand jury testimony made after, but pursuant to, a plea agreement is not entitled to the protections afforded by the exclusionary rule for statements made in the course of plea discussions).

elicited by his father's attorney, William Baxley, on cross-examination.[20]  See GSMF, at

¶¶ 44-47.

Because the Plea Agreement excludes only statements made "in connection with,

and relevant to, an offer to plead," the agreement cannot be read to exclude statements

made after entering into a plea agreement or statements made pursuant to the terms of a

"finalized" plea agreement.  The ordinary meaning of the words, as used in the Plea

Agreement, clearly and unambiguously excludes statements made as a part of the plea

agreement process, but does not exclude statements made after, or pursuant to, the plea

agreement.  Accordingly, the above provisions relied on by Reeves do not provide the

exclusionary protection that he seeks for his trial and deposition testimony.

In addition, nowhere in the Plea Agreement does it expressly preclude the IRS

from relying on, or using, Reeves' trial or deposition testimony in order to determine,

assess or collect taxes, including penalties and interest, due and owing by him as a result

of the illegal wagering activities conducted by him during 1994 through 1997.  See

---

[20]  Statements must be made to an attorney for the prosecuting authority.  Fed. R. Evid.
410.  See e.g., United States v. Davidson, 768 F.2d 1266, 1270, rehearing denied, 774 F.2d 1179
(11th Cir. 1985) (Statements inadmissible as those made in the course of plea discussions must be
to a counsel for the government to be so excluded); United States v. Keith, 764 F.2d 263, 266 (5th
Cir. 1985) (The exclusionary rules plainly provide that only statements that are made during
exchanges between a defendant and a prosecuting attorney for the government are eligible for
exclusion); United States v. Nemetz, 1987 WL 17543 (D. Mass. 1987) (Grand jury testimony is
not excluded as statements made in the course of plea discussions.  The statements were made to
a grand jury, and not an attorney for the prosecuting authority.  The statements also were made
after plea bargain negotiations had concluded).

Government's Exhibit "2;" GSMF, at ¶ 15 (integration clause).  In view of the above, no agreement exists between the parties that would require suppression or exclusion of any of Reeves' statements that were made during his trial and/or deposition testimony.  See Government's Exhibit "2;" GSMF, at ¶ 15 (integration clause).  Without an agreement to be enforced, Reeves' claims of exclusionary protection should be dismissed.

## IV.    EXCISE TAX ASSESSMENT IS CORRECT.

Reeves was in the business of accepting wagers during the periods covering 1994 through 1997 and failed to pay the excise tax of 2% due on such wagers, as required pursuant to IRC § 4401, *et seq*.[21]  Reeves did not keep any books or records of his wagering activities.  See GSMF, at ¶¶ 26 and 60.  As a result, the IRS was required to reconstruct Reeves' wagering activities in order to arrive at a wagering base upon which the excise tax could be assessed.  See GSMF, at ¶¶ 25-34.  In late 2004, the IRS assessed excise taxes, including penalties and interest, against Reeves in the total amount of $1,969,344.  See GSMF, at ¶ 24.

---

[21]  IRC § 4401(a)(2) provides that a person engaged in the business of accepting certain unauthorized wagers is liable for an excise tax based upon 2% of the amount of such wagers.  In determining the amount of any wagers subject to the excise tax, all charges incident to the placing of such wager are included.  IRC § 4401(b).  For instance, vigorish is included in the wagering base without regard to whether the bettor ultimately loses or wins.  See e.g., Treas. Reg. § 44.4401-1(b)(2), 26 C.F.R.; Robinson v. Commissioner, T.C. Memo 1986-382.  The term "vigorish" or "juice" refers to the commission paid by the bettor to the bookie over and above the amount bet.  Each person engaged in the business of accepting wagers shall be liable for and shall pay the tax on all wagers placed with him.  IRC § 4401(c).  The term "wager" includes "any wager with respect to a sports event or a contest placed with a person engaged in the business of accepting such wagers."  IRC § 4421(1)(A).

Reeves claims that the excise tax assessment is "erroneous" and/or "grossly overstated."  See GSMF, at ¶ 57.  In support of his "erroneous" and/or  "grossly overstated" claims, Reeves offers a report prepared by his expert, David W. Parsons, CPA.  See GSMF, at ¶ 58.  In preparing the report, Parsons advises that he primarily relied on:  **(1)** the oral representations of Reeves and Ronald Lynn Cherry, the person in charge of managing Reeves' illegal gambling operations during 1994 through 1997; and **(2)** an unqualified analysis performed by Cherry of some, but not all, of the court-authorized wire tap communications that occurred during the period from December 27, 1996 through January 12, 1997.  See GSMF, at ¶ 61.  In November, 1999, Cherry was found guilty of various offenses arising out of his involvement with the illegal gambling operations conducted by Reeves during 1994 through 1997.  See GSMF, at ¶ 62.

It is a well-settled principle that an assessment is presumed correct.  See e.g., Welch v. Helvering, 290 U.S. 111, 115 (1933).  However, before the government can rely on the presumption in a wagering excise tax case, it must present some evidence connecting the taxpayer with wagering activity during the time period covered by the assessment.  See Carson v. United States, 560 F.2d 693, 696-698 (5th Cir. 1977).  Only a minimal showing is required to give rise to a presumption of correctness.  See e.g., Waters v. United States, 1980 WL 1711, at *2 (N.D. Ga. 1980) (citing, Carson, 560 F.2d at 697).  Once such a showing is made the taxpayer bears the burden of proving by a preponderance of the evidence that the assessment is erroneous.  Carson, 560 F.2d at 696. See also, Heyman v. United States, 497 F.2d 121, 122 (5th Cir. 1974).  When the

government attempts to collect a tax by way of a counterclaim, as was done here, the

taxpayer bears the burden of proving the assessment is erroneous.  If met, the burden then

shifts to the government to prove the correct amount of taxes owed.  Carson, 560 F.2d at

696.

IRC § 4403 requires each person liable for wagering excise taxes to keep a daily

record showing the gross amount of all wagers on which he is so liable.[22]  See also, IRC

§ 6001.  Where a taxpayer fails to keep adequate records of his wagering activities, the

IRS may reconstruct the wagering activities of the taxpayer "by any reasonable method"

in order to arrive at the wagering base upon which the excise tax should be assessed.[23]

When the wagering amounts are known for a portion of the period or periods, such

_____

[22]  Treas. Reg. §§ 44.4403-1 and 44.6001-1, 26 C.F.R., require, in part, that the following daily records be kept:

(1)    The gross amount of all wagers accepted;
(2)    The gross amount of each class or type of wager accepted on each separate event, contest, or other wagering medium;
(3)    The gross amount of wagers accepted directly by the taxpayer; accepted by agents; accepted as laid-off wagers;
(4)    Detailed information with respect to laid-off wagers; and
(5)    The gross amount of tax collected from or charged to bettors as a separate item.

[23]  See e.g., United States v. Lochamy, 724 F.2d 494, 497 (5th Cir. 1984); Carson, 560 F.2d at 696; United States v. Firtel, 446 F.2d 1005, 1006-1007 (5th Cir. 1971).  See also, Dark v. United States, 641 F.2d 805, 808 (9th Cir. 1981); DeLorenzo v. United States, 555 F.2d 27, 29 (2d Cir. 1977); Robinson, T.C. Memo 1986-382.

amounts may be projected over the entire period.  Heyman, 497 F.2d at 122.[24]  In

computing the wagering base when adequate records have not been maintained, two

methods are commonly used, one is the "wagers accepted per game" method; the other is

the "wagers accepted per day."  Lochamy, 724 F.2d at 496; Heyman, 497 F.2d at 122.

The IRS's calculations of the tax liability need not be made with "arithmetic

precision" in those cases where the taxpayer has failed to keep records of his wagering

activities.[25]  The submission of uncorroborated oral testimony or self-serving statements

---

[24]  See e.g., Dark, 641 F.2d at 806 (IRS projected a one-year period of wagers based on data collected "over a three-day span"); Carson, 560 F.2d at 694 (IRS used one week of wagers shown in records seized in raid to determine the wagering base to assess taxes for the fall and winter months of 1970-1971 and 1971-1972); DeLorenzo, 555 F.2d at 27 (One day of seized records was used to determine the wagering base upon which the excise tax was imposed, nothwithstanding that receipts were unusually high on that day because of the World Series); Lucia v. United States, 474 F.2d 565, 574 (5th Cir. 1973) (One day of seized betting slips formed the basis upon which the IRS computed the gross wagers accepted by the taxpayer for a four-year period); Pinder v. United States, 330 F.2d 119, 124 (5th Cir. 1964) (Wagers subject to tax were calculated by taking the total wagers received as of the day of the raid and projecting that daily wagering amount back for the previous 62-week period); United States v. Cox, 1979 WL 1393, at *4 (D.S.C. 1979) (Annual income from lottery was calculated based on an average of the daily wagers obtained from 4-days of seized betting slips); Flanery v. United States, 1976 WL 1048, at *1 (D. Nev. 1976) (IRS determined the gross wagers for one football season based on one-week of wagering records seized in the raid of the taxpayer's apartment).

[25]  Webb v. Commissioner, 394 F.2d 366, 373 (5th Cir. 1968) ("Arithmetic precision was originally and exclusively in [the taxpayer]'s hands, and he had a statutory duty to provide it . . . . Having defaulted in his duty, he cannot now frustrate the Commissioner's reasonable attempts by compelling investigation and recomputation under every means of income determination"); Harbin v. Commissioner, 40 T.C. 373, 375 (1963) ("[W]here a taxpayer has deliberately and willfully failed and refused to keep and maintain any books or records of his business transactions, the Commissioner, in making his determination of deficiency, is not required to compute the net income of the taxpayer with mathematical exactness.  Under such circumstances, approximation in the calculation . . . is justified. . . .  [A] taxpayer [should not] be permitted to escape payment by the concealment of material facts" (citations omitted)).

are not sufficient to rebut the presumption of correctness due the IRS's tax assessment.[26]

Thus, in the  absence of records, self-serving testimony, uncorroborated by any additional

evidence, is insufficient to meet the burden of showing the incorrectness of an

assessment.  Heyman, 497 F.2d at 122.[27]  "As a practical matter and as a matter of law, [a

taxpayer] could have established an entitlement to a refund only through the records it

was required to keep under the Code."  Alabama Power, 1985 WL 6245, at * 4.

---

[26]  Mays v. United States, 763 F.2d 1295, 1296-1297 (11th Cir. 1985) (finding that a computer print-out submitted by a taxpayer in response to the government's interrogatories, and prepared after the tax audit, and net worth statements were only self-serving documents which failed to overcome the presumption of correctness due the IRS's assessment, since the statements did not refer to any original records and/or were not substantiated by any contemporaneous documentation or other evidence).

[27]  Griffin v. United States, 588 F.2d 521, 530 (5th Cir. 1979) ("A taxpayer cannot overcome the presumption of correctness through his own uncorroborated testimony"); DeLorenzo, 555 F.2d at 27 (The Second Circuit declined to find that the excise tax assessment was erroneous, even though it was based on one day of seized records and that day happen to have had unusually "high" receipts because of the World Series.  In rejecting the taxpayer's claims, the Court pointed to the fact that the taxpayer had not kept adequate records, admitted to his bookie activities and failed to proffer "credible" evidence of normal receipts); Alabama Power Co. v. United States, 1985 WL 6245, at *3 (N.D. Ala. 1985) (Rejecting the oral testimony and affidavit of a company's manager based on his personal observations, the Court instructed: "A taxpayer cannot meet his burden of proving that an assessment is wrong, or the correct amount of taxes, solely by uncorroborated oral testimony. . . .  The basis or rationale for the requirement of adequate record keeping is to keep the taxpayer from being able to meet his burden of proof by casual recollection.  Put another way, where a taxpayer fails to keep records, he cannot make it up by the use of oral testimony" (citations omitted)); Cox, 1979 WL 1393, at *4 ("Having failed to keep adequate records, oral testimony of the taxpayer and the alleged summaries of wagers are not sufficient to overcome the presumption of correctness attached to the Commissioner's determination" (citations omitted)); Ferguson v. Commissioner, T.C. Memo 2004-90 ("The Court . . . is not bound to accept improbable, unreasonable, or questionable testimony at face value, even if it is uncontroverted" (citations omitted)).

Applying the above principles here, Reeves' claim must be dismissed for failing to state a claim upon which relief can be granted. The evidence shows that the IRS assessment is entitled to a presumption of correctness. The United States has presented sufficient evidence connecting Reeves to the wagering activity during the time periods covered by the assessment. Reeves' own testimony confirms that he operated an illegal gambling business during 1994 through 1997, which involved the acceptance of wagers on professional and college football games. See GSMF, at ¶¶ 44-47. From this business, Reeves accepted substantial wagers during the periods covering 1994 through 1997. See GSMF, at ¶¶ 22-34 and 58-68. Search warrants executed on January 12, 1997 resulted in the return of gambling paraphernalia (e.g., betting slips, line sheets and substantial sums of cash). See GSMF, at ¶ 25. While Reeves was indicted on 14 counts arising out of his operation of an illegal gambling business, he ultimately pled guilty to one count of money laundering. See GSMF, at ¶¶ 5 and 7-12. The pled offense, however, stemmed from his involvement in operating the illegal gambling business during the periods covered by the assessment. See GSMF, at ¶¶ 12 and 44-47.

During 1994 through 1997, Reeves did not maintain any books and records for his illegal wagering activities. See GSMF, at ¶¶ 26 and 60. Reeves failed to file excise tax returns (i.e., Forms 730) for at least 15 periods extending over a 4-year period. See GSMF, at ¶¶ 22-34. He failed to report substantial wagers and pay the excise taxes due on such wagers. See GSMF, at ¶¶ 22-34. He also failed to report significant wagering income earned from his illegal gambling business and pay the income taxes due on such

income.  See GSMF, at ¶ 23.  The above evidence is sufficient to infer that Reeves was in fact involved in wagering activities during the periods for which assessments were made against him.  Thus, the presumption of correctness should be applied to the assessment here.

In attempting to rebut the presumption, Reeves has failed.  He has failed to provide any reliable evidence to support his contentions that the assessment is erroneous.  Because Reeves did not keep adequate books and records of his wagering activities, his challenge to the IRS's assessment is based on Parsons' report.  See GSMF, at ¶ 58.  Parsons' report primarily relies on the oral representations of Reeves and Cherry and certain unqualified analyses performed by Cherry with regard to some of the court-authorized wire tap communications.  See GSMF, at ¶¶ 61-67.  Cherry's "unqualified, self-serving and unsubstantiated testimony," via affidavit, is "unpersuasive."  See e.g., Robinson, T.C. Memo 1986-382.

The testimony provided by Cherry's affidavit lacks trustworthiness.  A substantial period of time has lapsed between when the wagering activities were conducted in 1994 through 1997 and the drafting of Cherry's affidavit in 2006.  See GSMG, at ¶ 69.  The length of time between the wagering activity and the execution of the affidavit by Cherry, in and of itself, significantly undercuts the reliability of Cherry's recollection of the amount of wagers accepted by Reeves during the periods at issue, or the annual percentage increase in gross wagers that occurred during the periods at issue.  See GSMF, at ¶¶ 61-67.  The lack of trustworthiness to be accorded Cherry's affidavit is further

reinforced by the fact that the affidavit is not "a spontaneous expression of Cherry's knowledge," but instead was drafted at the request of Reeves for the specific purpose of contesting the amount of the IRS assessment at issue here.  See GSMF, at ¶ 69.  In addition to the above, the affidavit is not supported by any corroborating evidence, such as books and records, but instead reflects "vague" guesses and speculations by Cherry.  See GSMF, at ¶¶ 61-67.

The trustworthiness of Cherry's affidavit is significantly undercut by the above and, therefore, should be given no weight as substantive evidence of the amount of wagers accepted by Reeves during the periods covering 1994 through 1997.  Parsons' report relies heavily, if not exclusively, on the uncorroborated testimony of Cherry.  See GSMF, at ¶¶ 60-69.  As a result, Parsons' report also should be given no weight as substantive evidence of the amounts accepted by Reeves as wagers during the periods covering 1994 through 1997.  In view of the above, Reeves has not offered any reliable evidence by which to show that the excise tax assessment is erroneous and/or grossly overstated.  As a result, his challenge to the excise tax assessment must be dismissed as a matter of law.

Given what was available to determine the excise tax assessment, the IRS "arrived at substantially correct results.  In any event, [Reeves] has offered little or nothing as an alternative."  Robinson, T.C. Memo 1986-382.  The IRS used the "wagers accepted per day" method and arrived at an excise tax amount of $585,876 for the 4-year period.  See GSMF, at ¶¶ 22-34.  The report of the government's expert further supports the

reasonableness of the IRS's assessment given the lack of records maintained by Reeves. The government's expert used the "wagers accepted per game" method and arrived at an excise tax estimate of $499,360.  See GSMF, at ¶¶ 70-72.  These figures are in stark contrast to the estimate of Reeves' expert, who, by using a "wagers accepted per day" method claims the excise tax liability equals $158,938.  See GSMF, at ¶ 59.

Here, the government met its burden of showing some link between Reeves and his wagering activities for the periods at issue.  Reeves has failed to prove that the government's method of calculating the amount of wagers placed with him was unreasonable or that the amount calculated was erroneous.  As a result, the excise tax assessment is presumed correct and the United States is entitled to judgment in its favor in the amount of the unpaid tax assessment of $1,967,844, plus interest thereon as is required by law.

## V.    EXCISE TAX ASSESSMENT DOES NOT VIOLATE REEVES' CONSTITUTIONAL RIGHTS.

Reeves claims that the assessment of excise taxes, including civil fraud penalties and interest, against him subjects him to an excessive fine in violation of the Eighth Amendment to the U.S. Constitution and constitutes multiple punishments proscribed by the Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution.  See GSMF, at ¶¶ 73-75.  In support of Reeves' constitutional claims, he refers to the following provision from the Plea Agreement:  "The United States further agrees that, based upon the substantial forfeitures made pursuant to this agreement, there should be no

fine imposed."  See Government's Exhibit "2," at pp. 2-3, § I(B); GSMF, at ¶ 75.

Reeves' reliance on the foregoing plea provision is misplaced.  Reference to the term

"fine" does not refer to Reeves' civil tax liabilities, but merely refers to the fine of up to

$250,000 that could have been imposed with regard to the money laundering offense to

which he pled guilty.  See Government's Exhibit "2," at pp. 2-3 and 9; GSMF, at ¶ 14.  In

fact, when Reeves was sentenced, the Court specifically acknowledged the particular

provision of the Plea Agreement and, thereafter, ordered that no fine be imposed.  See

GSMF, at ¶ 20.

As for Reeves' constitutional claims, they must be dismissed, as a matter of law,

because he has failed to state a claim upon which relief can be granted.  Contrary to

Reeves' contentions, assessment of excise taxes, including civil fraud penalties and

interest, do not subject him to an excessive fine in violation of the Eighth Amendment or

constitute multiple punishments proscribed by the Double Jeopardy Clause under the

Fifth Amendment.[28]

Reeves' reliance on Austin v. United States, 509 U.S. 602 (1993), is misplaced.

Austin involved a forfeiture case.  In that case, the Supreme Court held that a forfeiture,

---

[28]   See e.g., Louis v. Commissioner, 170 F.3d 1232, 1234- 1236 (9th Cir. 1999); United States v. Alt , 83 F.3d 779, 784 (6th Cir. 1996); Thomas v. Commissioner, 62 F.3d 97, 99-103 (4th Cir. 1995); McNichols v. Commissioner, 13 F.3d 432, 433-436 (1st Cir. 1993).

whether civil or criminal, is viewed as a punishment. Because the forfeiture statutes are punitive in nature, the forfeiture can be considered an excessive fine under the Eighth Amendment. However, unlike the forfeiture in <u>Austin</u>, the tax assessment, including civil fraud penalties and interest, is not viewed as punitive in nature and, therefore, cannot be characterized as an excessive fine under the Eighth Amendment or a violation of the Double Jeopardy Clause under the Fifth Amendment.[29]

Also, the assessment of civil fraud penalties, unlike the forfeiture in <u>Austin</u>, does not put Reeves in jeopardy of being punished twice for the same offense. Reeves' fraudulent intent to evade the payment of taxes is a separate and distinct matter from the money-laundering offense to which he plead guilty. The difference in the two matters preclude a double jeopardy violation. See <u>e.g.</u>, <u>Thomas</u>, 62 F.3d at 99-100.

Courts generally have declined to uphold Reeves' constitutional claims, finding that acceptance of such claims would only serve to allow "convicted criminals who are required to forfeit property as part of their punishment . . . [to] be insulated from having to pay taxes on income stemming from their illegal acts." See <u>e.g.</u>, <u>Thomas</u>, 62 F.3d at 103. Courts also have recognized that acceptance of the type of constitutional claims asserted by Reeves here, would only result in an "inequity" in that "honest people would

---

[29] See <u>e.g.</u>, <u>Louis</u>, 170 F.3d at1234-1236; <u>Alt</u>, 83 F.3d at 784; <u>Thomas</u>, 62 F.3d at 102-103; <u>McNichols</u>, 13 F.3d at 433-436.

continue to pay taxes, while criminal defendants would be relieved of the duty to pay

taxes due and owing as a result of their illegal activities."  See e.g., Thomas, 62 F.3d at

103.  The purpose of assessing a fraud penalty is "to protect the revenue and to reimburse

the government for the expense of investigating fraud."  See e.g., Louis, 170 F.3d at 1236.

For the above reasons, Reeves' constitution claims should be dismissed.

## VI.    REEVES IS NOT ENTITLED TO INJUNCTIVE RELIEF.

Reeves requests that this Court enjoin the IRS from assessing and/or collecting the

excise taxes assessed against him.  See GSMF, at ¶ 76.  Since the taxes have been

assessed, Reeves apparently is seeking to enjoin the IRS from taking any further

collection actions against him with regard to the excise tax assessment.  However,

Reeves' request for injunctive relief should be denied, as a matter of law.

To the extent that Reeves seeks to enjoin or restrain the IRS from collecting any

of the excise taxes, including penalties and interest thereon, assessed against him for the

periods covering 1994 through 1997, such injunctive relief is barred by the Anti-

Injunction Act, 26 U.S.C. § 7421(a).  Except for certain statutory exceptions, which are

not applicable here, IRC § 7421(a) prohibits the maintaining of any suit in any court by

any person "for the purpose of restraining the assessment or collection of any tax."  See

also, Lucia, 474 F.2d at 568.

Aside from the statutory exceptions, the Supreme Court has created a judicial exception. Lucia, 474 F.2d at 568 (citing, Enochs v. Williams Packing & Navigation Co., Inc., 370 U.S. 1 (1962) (other citation omitted)). Specifically, the Supreme Court has held that a federal court may enjoin the collection of federal taxes if the taxpayer can show that: **(1)** "it is clear that under no circumstances could the government ultimately prevail;" and **(2)** "equity jurisdiction otherwise exists." Lucia, 474 F.2d at 568 (quoting, Williams Packing, 370 U.S. at 7 (other citation omitted)).[30]

Injunctive relief is permitted under the judicially created exception "only if the [g]overnment's claim cannot be established 'under the most liberal view of the law and the facts.'" Lucia, 474 F.2d at 568 (citing, Williams Packing, 370 U.S. at 7 (other citation omitted)).[31] The discussions at pages 1 through 30, above, show that Reeves is unable to meet this requirement, for he cannot show that, under the most liberal view of the law and the facts, the United States will not prevail in this case.

---

[30] See also, Bob Jones Univ. v. Simon, 416 U.S. 725, 742-745 (1974) (both requirements must be met); Mathes v. United States, 901 F.2d 1031, 1033 (11th Cir. 1990) (Federal courts will entertain actions to enjoin the collection of taxes only in the "rare and compelling" of circumstances); MacElvain v. United States, 867 F. Supp. 996, 1000-1001 (M.D. Ala. 1994) (denial of taxpayer's request for injunctive relief, finding that the IRS's collection actions were not without any legitimate basis and that the taxpayer failed to prove that he was without an adequate legal remedy).

[31] See also, Vuin v. Burton, 327 F.2d 967, 968-970 (6th Cir. 1964).

Even if Reeves could show that "under no circumstances could the government ultimately prevail," he fails to meet the second requirement of the judicially created exception.  Reeves is unable to show that "equity jurisdiction otherwise exists."  Reeves has a "legal remedy adequate to protect him from irreparable harm."[32]  Lucia, 474 F.2d at 575-576.[33]  Here, Reeves' action includes a refund suit in which he can "test the validity of the entire assessment."[34]  Lucia, 474 F.2d at 576.  Because Reeves has an adequate legal remedy, there is no need for the Court to exercise its equity jurisdiction.  In view of the above, denial of any injunctive relief sought by Reeves in this action is warranted.

---

[32]  "[H]ardship alone is insufficient to justify injunctive relief against the collection of taxes."  Lucia, 474 F.2d at 577 (citations omitted).  "As the Supreme Court stated in Enochs, 'a suit may not be entertained merely because collection would cause an irreparable injury, such as the ruination of the taxpayer's enterprise.'"  Lucia, 474 F.2d at 577 (citing, Williams Packing, 370 U.S. at 6).

[33]  See also, South Carolina v. Regan, 465 U.S. 367, 372-374 (1984); Mathes, 901 F.2d at 1033; Trent v. United States, 442 F.2d 405, 406 (6th Cir. 1971); Bowers v. United States, 423 F.2d 1207, 1208 (5th Cir. 1970); Vuin, 327 F.2d at 970.

[34]  Bob Jones, 416 U.S. at 736 (The principal purpose of IRC § 7421(a) is to protect the government's "need to assess and collect taxes as expeditiously as possible with a minimum of preenforcement judicial interference, and to require that the legal right to the disputed sums be determined in a suit for refund" (citations omitted)).

**VII.    <u>REEVES IS NOT ENTITLED TO DECLARATORY RELIEF</u>.**

To the extent that Reeves seeks declaratory relief with regard to the federal excise

taxes, including penalties and interest thereon, assessed against him for the periods

covering 1994 through 1997, such declaratory relief is barred by the Declaratory

Judgment Act, 28 U.S.C. § 2201(a).  <u>See</u> GSMF, at ¶ 76.  The law in this area is

unequivocal.  Congress has specifically provided that, subject to certain limited

exceptions not applicable here, federal courts do not have jurisdiction to grant declaratory

relief in cases involving federal taxes.  28 U.S.C. § 2201(a).[35]  <u>See also</u>, <u>Bob Jones</u>, 416

U.S. at 732 , n. 7 (The prohibition against declaratory judgments on tax matters is at least

as broad in its prohibitive scope as the Anti-Injunction Act).[36]  As this action does not fall

within the specific exceptions to the Declaratory Judgment Act, Reeves' request for

declaratory relief should be denied.

---

[35]  28 U.S.C. § 2201(a) provides, in pertinent part:

    In a case of actual controversy within its jurisdiction, except with respect to
    Federal taxes other than actions brought under section 7428 of the Internal Revenue Code
    of 1986, . . . any court of the United States . . . may declare the rights and other legal
    relations of any interested party seeking such declaration, whether or not further relief is
    or could be sought.

[36]  <u>See also</u>, <u>MCA, Inc. v. American Broadcasting Cos., Inc.</u>, 715 F.2d 475, 476 (9th Cir.
1983); <u>Sands v. United States</u>, 1995 WL 552308, at *5-*6 (S.D. Fla. 1995).

**VIII.   CONCLUSION.**

As there exists no genuine issue of material fact, the United States is entitled to judgment, as a matter of law, Reeves' claims should be dismissed, and judgment should be entered in favor of the United States and against Reeves in the sum of $1,967,844, plus interest thereon as is required by law.

Dated this 5th day of May, 2006.

LEURA GARRETT CANARY
United States Attorney


s/ Lynne M. Murphy
LYNNE M. MURPHY
Trial Attorney, Tax Division
La. Bar No. 20465
D.C. Bar No. 485928
U.S. Department of Justice
P.O. Box 14198
Ben Franklin Station
Washington, D.C.  20044
Telephone:     (202) 514-5881
Facsimile:     (202) 514-9868
E-mail:        Lynne.M.Murphy@usdoj.gov