# GOVERNMENT EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TIMOTHY JOE REEVES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 1-05-CV-00542-MHT |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

### DECLARATION OF CHARLES NIVEN
### RETIRED FIRST ASSISTANT UNITED STATES ATTORNEY

I, Charles Niven, declare the following

1. I retired from the federal government on January 3, 2003. Prior to my retirement, I was employed by the United States Attorney's Office for the Middle District of Alabama for approximately twenty-six (26) years

2. During the last three (3) years of my employment, I served in the position of First Assistant United States Attorney. My official duties included, *inter alia*, supervising and handling the criminal prosecution of persons accused of committing federal offenses within the jurisdiction of the United States Attorney's Office for the Middle District of Alabama

### GENERAL BACKGROUND OF REEVES' CRIMINAL CASE:

3. In the late 1990s, I was responsible for supervising and handling the indictment and criminal prosecution of Timothy Joe Reeves and his confederates for certain offenses committed by them, including operating an illegal gambling business and engaging in money laundering in or around Dothan, Alabama See United States v Billy Joe Reeves, et al, Case No 99-CR-0013-S (M D Ala) In this respect, I was responsible for negotiating, drafting and approving any plea agreements that were entered into with Reeves and/or his confederates and, if

GOVERNMENT EXHIBIT A    1676091 1

pleas were not entered, handling the trial of those persons who declined to plead. My responsibilities also included monitoring any and all matters involving the sentencing of those persons who pled guilty or were convicted. As part of my duties, I also was responsible for supervising the Assistant United States Attorneys ("AUSAs") assigned to assist in the prosecution of Reeves and/or his confederates.

4. Reeves, together with the assistance of approximately twelve (12) other individuals, operated an illegal gambling business during the periods covering 1994 through 1997. See e.g., Government's Exhibit "1" for Indictment filed in United States v. Billy Joe Reeves, et al., Case No. 99-CR-0013-S (M.D. Ala.), on February 3, 1999, at pp. 1-2.

5. In February, 1999, a grand jury indicted Reeves and his confederates[1] for conducting a specified unlawful activity (i.e., illegal gambling business) and engaging in certain money laundering activities. The illegal gambling business primarily involved the receipt of wagers placed on professional and collegiate football games during 1994 through 1997. See Government's Exhibit "1."

6. The Indictment charged Reeves with the following 14 counts:

| | |
|---|---|
| **Count I:** | Conspiracy to operate an illegal gambling business<br>18 U.S.C. §§ 371 and 1955 |
| **Count II:** | Operation of an illegal gambling business<br>18 U.S.C. § 1955 |
| **Count III:** | Money Laundering<br>18 U.S.C. § 1956(a)(1)(A)(i) |

---

[1] Some of Reeves= confederates entered guilty pleas while others were tried, some of whom were convicted and others were acquitted. See e.g., Government=s Exhibit A4,@ infra.

1676091 1

   **Count VI-XV:**  Money Laundering
           18 U S C § 1956(a)(1)(B)(i)

   **Count XVI:**  Conspiracy to launder money
           18 U S C § 1956(h)

See Government's Exhibit "1," at pp 1-8 and 10-21

  7.  The Indictment also alleged that if Reeves was convicted of the money laundering offenses, identified in paragraph 6, above, he would be required to forfeit certain property, among which included any and all property involved in the money laundering offenses or any property traceable to such property See Government's Exhibit ' 1," at pp 21-22

  8  On October 14, 1999, and after extensive negotiations, Reeves entered into a written Plea Agreement See Government's Exhibit "2" for Plea Agreement of Timothy Joe Reeves filed in <u>United States v Billy Joe Reeves, et al</u>, Case No 99-CR-0013-S (M D Ala ), on October 14, 1999, at pp 1-3, Government's Exhibit "3" for File-stamped Copy of Plea Agreement of Timothy Joe Reeves

  9.  I have reviewed the exhibit, identified as Government's Exhibit "2," and confirm that it is a true and correct copy of the Plea Agreement executed by Reeves on October 14, 1999 See Government's Exhibit "2 "

  10  In the Plea Agreement, Reeves agreed, in pertinent part, to plead guilty to one count of money laundering, with the charges in the Indictment being dismissed against Reeves and his wife, Wendy Ann Smith Reeves The United States Attorney, in turn, agreed to recommend certain reductions in the offense level for sentencing purposes if certain conditions were met, including full compliance by Reeves with the terms of the Plea Agreement See Government's Exhibit "2," at pp 1-3

11.   In the Plea Agreement, the parties also agreed to the disposition of certain properties subject to forfeiture. Specifically, Reeves agreed to forfeit his interest in the following properties: **(1)** cash in the sum of $95,296.87, **(2)** real property at 1073 Malvern Road, including improvements, fixtures and trailers thereon, and **(3)** a 1997 GMC Sierra pick-up truck. The United States Attorney, in turn, agreed to return the following properties to Reeves and dismiss the civil forfeiture proceedings pertaining to such properties: **(1)** real property at 1075 Malvern Road, including fixtures and improvements, **(2)** computer equipment, and **(3)** cash in the sum of $14,000. See Government's Exhibit "2," at pp. 4-5.

12.   As part of the Plea Agreement, the United States Attorney also agreed that he would recommend that no fine be imposed, since Reeves had agreed to the property forfeitures, identified in paragraph 11, above. With respect to the charge for which Reeves pled guilty, a fine could have been imposed in an amount not to exceed $250,000. See Government's Exhibit "2," at pp. 2-3 and 9.

13.   The Plea Agreement contained the following integration clause in order that the parties could confirm and acknowledge that their entire agreement was contained within the "four corners" of the written Plea Agreement:

### K.   Scope Of The Agreement

> 2   The undersigned attorneys for the Government and for [Reeves] represent to the Court that the foregoing Plea Agreement is the agreement of the parties that has been reached pursuant to the Plea Agreement procedure provided for in Rule 11, Federal Rules of Criminal Procedure, as amended. It is further understood and agreed that no additional promises, agreements or conditions have been entered into other than

4

those set forth in this agreement, and that this agreement supersedes any earlier or other understanding or agreement

See Government's Exhibit "2," at pp 3 and 11, § III(K)(2)

14. On October 14, 1999, Reeves signed the Plea Agreement In signing the Plea Agreement, Reeves expressly acknowledged the following

> I have read the foregoing Plea Agreement, consisting of 12 pages, understand the same, and the matters and facts set forth therein accurately and correctly state the representations that have been made to me and accurately set forth the conditions of the Plea Agreement that has been reached

See Government's Exhibit "2," at p 12

15. When Reeves entered into the Plea Agreement, he did so knowingly and voluntarily  See e g , Government's Exhibit "2," at pp 8-11, § III(K)(1)

16. When Reeves negotiated and executed the Plea Agreement, he was represented by counsel, L Drew Redden, Esquire  Redden signed the Plea Agreement on October 14, 1999 See Government's Exhibit "2," at pp 1, 10 and 12, §§ III(K)(1)(c) and (3)

17. I, as a delegate of the United States Attorney, approved the Plea Agreement  As evidence of that approval, the Plea Agreement was signed by me and former AUSA Ashton Holmes Ott, on behalf of the United States Attorney, on October 14, 1999  See Government's Exhibit "2," at pp 1 and 12

18. On February 1, 2000, the Court sentenced Reeves to serve a term of imprisonment of 15 months, and upon release from imprisonment, to be placed on supervised release for a term of three years  After acknowledging the terms of the Plea Agreement, the Court ordered that no fine be imposed  Reeves, however, was ordered to pay a special assessment of $100  See Government's Exhibit "4" for Transcript of Sentence Hearings held in United States v Billy Joe

5

1674261 1
1676091 1

Reeves, et al., Case No 99-CR-0013-S (M D Ala ), on February 1, 2000, at pp 19 and 25-28, Government's Exhibit "5" for Judgment in a Criminal Case entered in United States v Timothy Joe Reeves, Case No 1 99-CR-00013-002, on February 10, 2000

19. During Reeves' Sentencing Hearing, Redden, Reeves' counsel, discussed the terms of the Plea Agreement, but never once mentioned a purported promise to settle or compromise Reeves' civil tax liabilities Instead, Redden made repeated representations consistent with the Plea Agreement, that the parties agreed that no fine would be imposed because of the property forfeitures agreed to by Reeves See Government's Exhibit "4, supra, at pp 7-8 and 16-19

### PLEA AGREEMENT DID NOT SETTLE REEVES' CIVIL TAX LIABILITIES:

20. The Plea Agreement did not provide for any settlement or compromise of the civil tax liabilities that may have been due and owing from Reeves for the periods covering 1994 through 1997 Nowhere in the Plea Agreement is such a settlement or compromise ever mentioned See ¶ 13, supra (integration clause)

21. The amount of Reeves' civil tax liabilities was not an element for any of the nontax criminal offenses for which he was indicted or the offense to which he ultimately pled guilty See Government's Exhibits "1" and "2," supra

22. I participated in discussions to negotiate the Plea Agreement At no time during those discussions did the parties ever discuss settlement or compromise of Reeves' civil tax liabilities Had such discussions occurred, I would have advised Reeves and his counsel, Redden, that the United States Attorney and/or his delegate did not have the authority to settle or compromise Reeves' civil tax liabilities

23.     I never represented to Reeves and/or his counsel, Redden, that I had any authority to control any actions that the IRS may take in determining, assessing or collecting any tax liabilities due and owing by Reeves for the periods covering 1994 through 1997

24.     Although the parties never discussed settlement of Reeves' civil tax liabilities, they did discuss and agree that there would be no further criminal prosecution of Reeves for any tax offenses committed in connection with his illegal wagering activities, based on information and evidence then available to the government  See fn 2, infra, for the definition of the term "offense "  On this point, the following provision was included in the Plea Agreement to reflect the parties' agreement

### G.     No Further Prosecution

The United States further agrees that in return for the defendant's compliance with the terms of this agreement there will be no further federal criminal prosecution of the defendant in the Middle District of Alabama based on the information and evidence now available to the United States regarding the defendant's involvement with violations of 18 U S C § 1955, 1956, and 1957 or any federal tax provision

See Government's Exhibit "2," at pp 3 and 8, § III(G)

### REEVES' TRIAL AND DEPOSITION TESTIMONY ARE NOT PROTECTED BY PLEA AGREEMENT:

25.     After entering into the Plea Agreement on October 14, 1999 and pursuant to its terms, Reeves testified at the trial held in the criminal proceedings, United States v Billy Joe Reeves, et al , 99-CR-0013-S (M D Ala )  During that trial, Reeves offered substantial testimony with regard to the operations of the illegal gambling business conducted by him during the periods covering 1994 through 1997  See e g , Government's Exhibit "6" for IRS Administrative Files for Excise Tax Assessment Against Reeves, at Bate-stamped Nos IRS223-IRS238

7

26.　In addition to the criminal proceedings, discussed in paragraph 25, above, I was aware of various civil forfeiture proceedings that were commenced to seek, in pertinent part, forfeiture of various properties in which certain persons claimed to have an interest  I am advised that, after Reeves entered into the Plea Agreement and pursuant to its terms, he was deposed in the civil proceedings and, during such deposition, provided testimony with regard to the operations of his illegal gambling business  See e g , Government's Exhibit "6," supra, at Bate-stamped Nos  IRS176-IRS220

27.　I am advised that in determining the excise tax assessment, the IRS relied on an FBI report prepared during the criminal investigation and the testimony provided by Reeves during the trial in the criminal proceedings and the deposition in the civil forfeiture proceedings  See e g , Government's Exhibit "6," supra, at Bate-stamped Nos  IRS002-IRS005 and IRS162-IRS238

28.　In negotiating the Plea Agreement, there were no discussions that the Plea Agreement would preclude the IRS and/or the Department of Justice, Tax Division, from relying on any statements made by Reeves during his trial or deposition testimony for purposes of determining, assessing or collecting the taxes, plus penalties and interest, due and owing by him for the wagering activities conducted by him during 1994 through 1997, and/or from admitting such statements against him in the above-captioned civil proceeding  See Government's Exhibit 2 "  See also, ¶ 13, supra (integration clause)

**29.**    As part of the Plea Agreement, Reeves agreed to cooperate with the government and, on this point, the Plea Agreement provided, in pertinent part, the following

### C.    Cooperation Agreement

1    [Reeves] agrees to cooperate fully and testify truthfully against any and all persons as to whom he may have knowledge at grand jury, trial or whenever called upon to do so, with the exception that [he] will not be required to testify against his father, Billy Joe Reeves

2    Provided that [Reeves] satisfies the terms of the plea agreement, any information that he truthfully discloses to the government during the course of his cooperation, concerning related offenses, will not be used against him, directly or indirectly    [Reeves] understands that this agreement does not bar his prosecution for capital felonies, perjury, false statements, and obstruction of justice

3    If [Reeves] has failed or should fail in any way to fulfill completely his obligations under this agreement, then the government will be released from its commitment to honor all of its obligations to him    Thus, if at any time he should knowingly and willfully withhold evidence from the government investigators or attorneys prior to or during his testimony before grand juries or in trials, then the government will be free  (1) to prosecute him for perjury, false declaration, false statement, and/or obstruction of justice (18 U S C  Section 1621, 1623, 1001, 1503), (2) to prosecute him for all violations of federal criminal law which he has committed, (3) to use against him in all of those prosecutions and sentencings the information and documents that he has himself disclosed or furnished to the government during the course of his cooperation, (4) to recommend a maximum sentence, and (5) to seek forfeiture of any and all forfeitable properties of [Reeves]   The parties agree to submit to the court, to be decided by a preponderance of the evidence standard, the question of whether [Reeves] has breached this agreement

See Government's Exhibit "2," at pp  3 and 5-7, § III(C)

**30.**    The provision of the Plea Agreement, quoted above in paragraph 29, above, does not preclude use of Reeves' trial or deposition testimony by the IRS to determine, assess or collect the civil tax liabilities due and owing by him   Instead, the provision operates to preclude the United States Attorney from using any of the statements for the purpose of prosecuting

9

1674261 1
1676091 1

Reeves for any "related offenses" The term "offenses," as used in its ordinary and usual meaning, refers to "criminal offenses"[2]

31.    The Plea Agreement also included the following acknowledgment made by Reeves regarding the specific terms governing the inadmissibility of statements made during plea negotiations

**K.    Scope Of The Agreement**

    1    [Reeves], before entering a plea of guilty to Count One of the information currently pending against him, advises the Court that

    h    [Reeves] further advises the Court that [Reeves] understands and has been advised that evidence of a plea of guilty, later withdrawn or an offer to plead guilty to the crime charged in the Information herein, or of statements made in connection with and relevant to said plea or offer to plead, shall not be admissible in any civil or criminal proceedings against [Reeves]  However, [Reeves] does understand that evidence of a statement made in connection with and relevant to a plea of guilty, later withdrawn, or an offer to plead guilty to the crimes charged in the Information herein, is admissible in a criminal proceeding for perjury or false statement when the statement was made by [Reeves] under oath, on the court record, and in the presence of counsel

See Government's Exhibit "2," at pp 3 and 11, § III(K)(1)(h)

---

[2] The term Aoffense@ is defined as follows

> A violation of the law  a crime    [a]lso termed *criminal offense*    The terms >crime,= >offense = and >criminal offense= are all said to be synonymous, and ordinarily used interchangeably  >Offense= may comprehend every crime and misdemeanor, or may be used in a specific sense as synonymous with >felony= or with >misdemeanor = as the case may be, or as signifying a crime of lesser grade, or an act not indictable  punishable summarily or by the forfeiture of a penalty

Black=s Law Dictionary (8th ed 2004)

32. The provision of the Plea Agreement, quoted in paragraph 31, above, provides exclusionary protection for only statements that were made "in the course of plea discussions."

33. The Plea Agreement does not provide exclusionary protection for any statements that were made after, or pursuant to, the agreement, such as statements made in cooperation with the government or testifying against co-defendants at trial

34 Any statements made during Reeves' trial and deposition testimony, as described in paragraphs 25 and 26, above, are not part of plea negotiations and, therefore, fall outside the exclusionary protection provided for in the Plea Agreement  See ¶ 13, supra (integration clause)

35. The provisions of the Plea Agreement, quoted in paragraphs 29 and 31, above, do not expressly preclude the IRS from relying on, or using, Reeves' trial or deposition testimony to determine, assess or collect Reeves' civil tax liabilities  See ¶ 13, supra (integration clause)

36. The provisions of the Plea Agreement, quoted in paragraphs 29 and 31, above, are not unique to Reeves' agreement, but instead are standard provisions that generally were included in all plea agreements that the United States Attorney's Office for the Middle District of Alabama entered into at or around the time that Reeves entered into his Plea Agreement on October 14, 1999  See e.g., Government's Exhibit "9" for Plea Agreement of Vivian Welch Bond filed in United States v Billy Joe Reeves, et al., Case No 99-CR-0013-S (M D Ala ), on October 14, 1999, at pp 3-5, § III(C) and pp 7 and 9, § III(K)(1)(h), Government's Exhibit "10" for Plea Agreement of David Franklin Mims filed in United States v Billy Joe Reeves, et al.,

Case No 99-CR-0013-S (M D Ala ), on October 20, 1999, at pp 3-5, § III(C) and pp 7 and 9, § III(K)(1)(h)

I declare under penalty of perjury that the foregoing is true and correct

Executed on this 1st day of May, 2006

*[signature]*
CHARLES NIVEN

12