IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| TIMOTHY JOE REEVES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:05-CV-00542-MHT |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

OPPOSITION OF UNITED STATES
TO PLAINTIFF TIMOTHY JOE REEVES'
MOTION FOR SUMMARY JUDGMENT

_____Pursuant to the Court's Order entered on May 16, 2006, the defendant, United

States of America, respectfully submits its Opposition to the Motion for Summary

Judgment filed by the plaintiff, Timothy Joe Reeves.  The United States opposes Reeves'

motion for the reasons set forth in its Motion for Summary Judgment previously filed

with this Court on May 5, 2006[1] and for the reasons discussed below.

In Reeves' motion, he claims that he is not obligated to pay the excise tax

assessment due and owing by him for the periods covering 1994 through 1997 because

the assessment "is in direct violation of, and constitutes a breach of, [his] Plea

_____

[1]  To the extent that the United States has already addressed any issues presented in
Reeves' motion in the Motion for Summary Judgment that it previously filed on May 5th, it will
refrain from repeating those discussions herein and, instead, incorporates its Motion for
Summary Judgment, including Memorandum of Law In Support thereof, Statement of Material
Facts and accompanying Exhibits, herein.

1727903.1

Agreement."[2]  Neither the law nor the facts support Reeves' claims that the excise tax

assessment constitutes a violation and/or breach of the Plea Agreement.[3]  The Plea

Agreement does not provide for any settlement or compromise of Reeves' civil tax

liabilities and, as a result, Reeves is obligated to pay the excise tax assessment due and

owing by him for the periods covering 1994 through 1997.[4]  Reeves' motion should be

denied and the government's motion should be granted.

I.    **REEVES HAS FAILED TO PROVE THAT THE PLEA AGREEMENT SETTLED HIS CIVIL TAX LIABILITIES.**

Reeves has failed to meet his burden of proof that the Plea Agreement provided

for the settlement or compromise of his civil tax liabilities.  To support his claim, Reeves

attempts to rely on certain extrinsic evidence, including his Affidavit and the Affidavit of

Ashton Holmes Ott, former Assistant United States Attorney ("AUSA").[5]  Reeves'

reliance on the extrinsic evidence should be rejected for two major reasons.

First, and as previously addressed in the government's motion, consideration of

any extrinsic evidence in interpreting the Plea Agreement is inappropriate where, as here,

---

[2]  See Reeves' Memorandum of Facts and Law In Support of His Motion for Summary Judgment filed on May 5, 2006 ("Reeves' Memorandum"), at pp. 2 and 7-14.

[3]  See e.g., Government's Memorandum of Law In Support of Its Motion for Summary Judgment filed on May 5, 2006 (Government's Memorandum), at pp. 3-22.

[4]  See Government's Memorandum, at pp. 3-22.

[5]  See Reeves' Memorandum, at pp. 9-14; Reeves' Exhibit "H" for Declaration of Timothy Joe Reeves executed on April 27, 2006; Reeves' Exhibit "I" for Declaration of Ashton Holmes Ott executed on February 2, 2005.

1727903.1                                  2

the terms of the written Plea Agreement are clear and unambiguous.  In such cases, the Court is limited to interpreting the language of the written agreement and may not resort to extrinsic evidence to discern the parties' intent.[6]  Here, the written Plea Agreement never mentions Reeves' civil tax liabilities, much less any settlement or compromise of such tax liabilities.[7]  The written Plea Agreement simply does not contain any language that would permit a conclusion that a settlement or compromise of Reeves' civil tax liabilities was effectuated as part of Reeves' guilty plea.  The written Plea Agreement also simply does not prohibit the IRS from assessing any excise taxes, including penalties and interest, against Reeves for the periods covering 1994 through 1997.[8]

Second, and even if consideration of extrinsic evidence is allowed, the evidence relied on by Reeves fails to provide the "objective ascertainable" proof necessary to warrant a finding that he could have reasonably understood that the Plea Agreement provided a settlement or compromise of his civil tax liabilities.  For instance, in support of his contentions, Reeves relies on two affidavits, his Affidavit and the Affidavit of Ashton Holmes Ott.  Both affidavits are insufficient to support Reeves' motion and/or to oppose the government's motion.

---

[6]  See Government's Memorandum, at pp. 4-9.

[7]  See Government's Memorandum, at pp. 4-9.

[8]  See Reeves' Memorandum, at pp. 9-14; Reeves' Exhibit "H;" Reeves' Exhibit "I."

The affidavits of Reeves and Ott are based solely on subjective beliefs and/or general conclusory allegations. In Reeves' affidavit, he claims that "it was [his] understanding, based on the actions and representations of the United States Government, that the Plea Agreement included both the settlement of civil and criminal proceedings against [him], and was intended by the United States Government to be a total settlement agreement of all criminal and civil matters," including prohibiting the IRS from making the excise tax assessment. See Reeves' Exhibit "H," at p. 2. In Ott's affidavit, she states "[t]hat the Plea Agreement . . . was intended by [her] as Assistant United States Attorney representing the United States to be a global settlement agreement, thereby precluding [the IRS from making the excise tax assessment]." See Reeves' Exhibit "I," at p. 2.

Neither affidavit sets forth the specific allegations that are required to support the claims being asserted therein. See e.g., Fed. R. Civ. P. 56(e). Neither affidavit alleges exactly what actions and representations were made by the government to cause Reeves to "reasonably" understand that his civil tax liabilities were settled or compromised as part of his Plea Agreement.[9] Neither affidavit specifically alleges what discussions, if any, occurred between the IRS and/or the prosecuting attorneys and Reeves and/or his counsel to agree to a settlement or compromise of his civil tax liabilities as part of his

---

[9] But see, Government's Memorandum, at pp. 8-11; Government's Exhibit "A" for Declaration of Charles Niven, at pp. 6-7.

1727903.1                                    4

Plea Agreement.[10]  Neither affidavit sets forth any allegations with regard to the parties'
purported agreement as to the essential elements necessary to effectuate a settlement or
compromise of Reeves' civil tax liabilities, among which includes the types and amount
of taxes that supposedly were settled or compromised.[11]  Neither affidavit sets forth the
reasons why such purported settlement or compromise of Reeves' civil tax liabilities was
not specifically mentioned in the Plea Agreement despite the parties' knowing inclusion
of the integration provision in the written Plea Agreement, requiring all terms to be
included in the written Plea Agreement if they are to be enforceable.[12]

        In addition, conspicuously missing from Ott's affidavit is the source of her
authority, as an AUSA, to settle or compromise any civil tax liabilities due and owing by
Reeves for the periods covering 1994 through 1997.  See Reeves' Exhibit "I."  Ott's
former position, as AUSA, was not in and itself sufficient to grant her the authority to
enter into the Plea Agreement, let alone enter into a settlement or compromise of any civil
tax liabilities due and owing by Reeves.[13]  Even if Ott claims that she intended to
discharge Reeves' civil tax liabilities, she simply lacked the authority to settle or
compromise such tax liabilities and, as a result, any such settlement agreement is

---

[10]  But see, Government's Memorandum, at pp. 8-11; Government's Exhibit "A," at
pp. 6-7.

[11]  But see, Government's Memorandum, at pp. 10-11; Government's Exhibit "A," at
pp. 6-7.

[12]  See Government's Memorandum, at pp. 5-9.

[13]  See Government's Memorandum, at pp. 12-13.

unenforceable.[14]

In further support of the baseless claims, Reeves and Ott, through their respective affidavits, contend that the IRS's participation in the criminal investigation indicates that Reeves' understanding of the Plea Agreement was reasonable.[15] Their claims regarding the IRS's participation in the criminal investigation are based on general conclusory allegations and are purely speculative and conjectural.[16] Such general conclusory allegations, speculation and conjecture are not sufficient to support a summary judgment in favor of Reeves or to oppose a summary judgment in favor of the United States.

Further, a review of the specific facts pertaining to the IRS's participation in the criminal investigation reveals that the claims asserted by Reeves and Ott are baseless and should be rejected. Two Special Agents of the Internal Revenue Service, Criminal Investigation Division ("CID Agents"), A. Gillis Douglass, III and Louie Wilson, did, in fact, participate in the criminal investigation of Reeves and his confederates.[17] While two

---

[14] See Government's Memorandum, at pp. 12-13.

[15] See Reeves' Memorandum, at pp. 9-12; Reeves' Exhibit "H," at pp. 1-2; Reeves' Exhibit "I," at p. 1.

[16] See Reeves' Memorandum, at pp. 9-12; Reeves' Exhibit "H," at pp. 1-2; Reeves' Exhibit "I," at p. 1.

[17] See Government's Exhibit "B" for Declaration of Charles A. Bravata, Sr., Special Agent for the Federal Bureau of Investigation, executed on May 22, 2006; Government's Exhibit "C" for Declaration of A. Gillis Douglass, III, Retired Special Agent for the Internal Revenue Service, Criminal Investigation Division, executed on May 19, 2006; Government's Exhibit "D" for Declaration of Louie Wilson, Special Agent for the Internal Revenue Service, Criminal Investigation Division, executed on May 16, 2006.

CID Agents participated in the criminal investigation, their involvement in such

investigation had nothing to do with any determination or any settlement or compromise

of any civil tax liabilities that may have been due and owing by Reeves for the periods

covering 1994 through 1997.

Charles A. Bravata, Sr., a Special Agent for the Federal Bureau Investigation,

was the person responsible for conducting the criminal investigation of Reeves and his

confederates for certain non-tax offenses committed by them, including operating an

illegal gambling business and engaging in money laundering activities.[18]  In conducting

the criminal investigation, Bravata received assistance from various sources, among

which included several FBI Special Agents, numerous law enforcement officers from the

Dothan Police Department and two CID Agents from the IRS.[19]

Douglass and Wilson were the two CID Agents who were assigned to assist

Bravata in conducting the criminal investigation of Reeves and his confederates.[20]

Douglass was assigned to participate in the money laundering aspects of the criminal

investigation.[21]  Douglass' participation in the criminal investigation consisted of

assisting in the execution of search warrants, monitoring the return of certain grand jury

---

[18]  See Government's Exhibit "B," at pp. 1-2.

[19]  See Government's Exhibit "B," at p. 2.

[20]  See Government's Exhibit "B," at pp. 1-3; Government's Exhibit "C," at pp. 1-2; Government's Exhibit "D," at pp. 1-2.

[21]  See Government's Exhibit "B," at pp. 2-3; Government's Exhibit "C," at pp. 1-2.

subpoenas, interviewing witnesses and analyzing business and financial records.[22]
Wilson's participation in the criminal investigation was limited.  He assisted in executing
one of the numerous search warrants executed on January 12, 1997.[23]

 During the criminal investigation, neither Douglass nor Wilson was assigned
and/or directed to determine:  **(1)** what, if any, tax offenses may have been committed by
Reeves and/or his confederates during the periods covering 1994 through 1997; **(2)** what
type of taxes, if any, may have been owed by Reeves and/or his confederates during the
periods covering 1994 through 1997; or **(3)** what amount of taxes, if any, may be owed by
Reeves and/or his confederates during the periods covering 1994 through 1997.[24]  The
criminal investigation was limited to investigating non-tax offenses.[25]  The amount of any
civil tax liabilities that may have been due and owing by Reeves was not an element for
indicting or prosecuting him for the non-tax offenses that were the subject of the criminal
investigation.[26]

 The criminal investigation ultimately led to the indictment of Reeves and his
confederates for various non-tax offenses, including operating an illegal gambling

---

[22]  See Government's Exhibit "B," at pp. 2-3; Government's Exhibit "C," at pp. 1-2.

[23]  See Government's Exhibit "B," at pp. 2-3; Government's Exhibit "D," at pp. 1-2.

[24]  See Government's Exhibit "B," at p. 3; Government's Exhibit "C," at pp. 2-3;
Government's Exhibit "D," at p. 2.

[25]  See Government's Exhibit "B," at p. 3; Government's Exhibit "C," at p. 3.

[26]  See Government's Exhibit "B," at p. 4; Government's Exhibit "C," at p. 3.  See also,
Government's Exhibit "1" for Indictment; Government's Exhibit "A," at p. 6.

business and engaging in money laundering activities.[27]  In October, 1999, Reeves entered

into a Plea Agreement.[28]  Wilson was never present during any plea discussions, but

Bravata and Douglass were present during some of those discussions.[29]  Although Bravata

and Douglass were present during some of the plea negotiations, they were not aware of

any discussions involving any settlement or compromise of any civil tax liabilities that

may have been due and owing by Reeves for the periods covering 1994 through 1997.[30]

Neither Bravata, Douglass nor Wilson are aware of the making or offering of any

promises to settle or compromise Reeves' civil tax liabilities.[31]

During the criminal investigation, Bravata, Douglass and Wilson never

represented to Reeves and/or his counsel that they had any authority to settle or

compromise any of the civil tax liabilities that may have been due and owing by Reeves

for the periods covering 1994 through 1997.[32]  Also, during the criminal investigation,

---

[27]  See Government's Exhibit "B," at p. 4; Government's Exhibit "C," at p. 3.  See also, Government's Exhibit "1;" Government's Exhibit "A," at pp. 2-3.

[28]  See e.g., Government's Exhibit "2" for Plea Agreement; Government's Exhibit "A," at pp. 3-7.

[29]  See Government's Exhibit "B," at p. 4; Government's Exhibit "C," at p. 4; Government's Exhibit "D," at p. 3.

[30]  See Government's Exhibit "B," at p. 4; Government's Exhibit "C," at p. 4.  See also, Government's Exhibit "A," at pp. 6-7.

[31]  See Government's Exhibit "B," at p. 4; Government's Exhibit "C," at p. 4; Government's Exhibit "D," at p. 3.

[32]  See Government's Exhibit "B," at p. 5; Government's Exhibit "C," at p. 4; Government's Exhibit "D," at p. 3.  See also, Government's Exhibit "A," at p. 6.

1727903.1                                        9

Bravata, Douglass and Wilson never represented to Reeves and/or his counsel that they had any authority to control any actions that the IRS might take in determining, assessing or collecting any tax liabilities that might have been due and owing by Reeves for the periods covering 1994 through 1997.[33]

In addition to participating in the criminal investigation, Douglass also provided assistance in connection with certain civil proceedings that involved the forfeiture of various properties pertaining to money laundering offenses that arose out of the criminal investigation of Reeves and his confederates.[34] Specifically, Douglass attended Reeves' deposition that was taken in connection with the civil forfeiture proceedings.[35] Douglass attended the deposition at the request of John Harmon, the Assistant United States Attorney who was responsible for handling the litigation of the civil forfeiture proceedings.[36] Douglass' attendance was necessary because of the knowledge that he had acquired during the criminal investigation with regard to the money laundering offenses and the properties subject to forfeiture on account of such money laundering offenses.[37] The above testimony by Bravata, Douglass and Wilson, together with the prior testimony

---

[33] See Government's Exhibit "B," at p. 5; Government's Exhibit "C," at p. 4; Government's Exhibit "D," at p. 3. See also, Government's Exhibit "A," at p. 7.

[34] See Government's Exhibit "C," at p. 5.

[35] See Government's Exhibit "C," at p. 5.

[36] See Government's Exhibit "C," at p. 5.

[37] See Government's Exhibit "C," at p. 5.

of Niven, are consistent with the terms of the written Plea Agreement and further show

that the claims of Reeves and Ott are baseless.

In Reeves' motion, he also refers to the Criminal Judgment entered against Reeves

and points to the fact that such Judgment was not received by the IRS Examination Group

until April 28, 2000.[38] This evidence fails to support Reeves' claims regarding the nature

of the IRS's participation and involvement with his Plea Agreement and, instead,

provides strong support that the requisite participation by the IRS was non-existent when

Reeves entered his guilty plea. As pointed out by Reeves, the Criminal Judgment entered

against Reeves was not received by the IRS Examination Group until April 28, 2000.[39]

As a result, the IRS Examination Group, who was responsible for determining any civil

tax liabilities that might be due and owing by Reeves, did not receive the Criminal

Judgment until after Reeves had provided trial and deposition testimony in October, 1999

and February, 2000. The time line established by Reeves contradicts his claims that a

settlement or compromise of his civil tax liabilities was a part of his Plea Agreement.

This conclusion is further supported by the fact that the IRS Examination Group did not

make any determination of any excise tax liability due and owing by Reeves until July,

---

[38] See e.g., Reeves' Memorandum, at pp. 6 and 10; Reeves' Exhibit "E" for Judgment in a Criminal Case entered in United States v. Timothy Joe Reeves, 1:99-CR-0013-S (M.D. Ala.) on February 10, 2000, at p. 1.

[39] See e.g., Reeves' Memorandum, at pp. 6 and 10; Reeves' Exhibit "E," at p. 1.

2000.[40]

Reeves' reliance on <u>Arnett v. United States</u>, 804 F.2d 1200 (11th Cir. 1986) and

<u>Creel v. Commissioner</u>, 419 F.3d 1135 (11th Cir. 2005) is misplaced.[41]  In <u>Arnett</u>, the

Eleventh Circuit held that the government, by filing a Complaint for Forfeiture In Rem,

seeking forfeiture of Arnett's house and farm, breached the terms of Arnett's plea

agreement in which he agreed to forfeit $3,000 on his person at the time of his arrest.  In

finding that the government violated the terms of Arnett's plea agreement, the Eleventh

Circuit stated, in pertinent part, the following:

> It is clear from the record that Arnett believed that his plea agreement prevented the government from seeking any forfeitures beyond the $3,000 and that this belief was reasonable under the circumstances.  According to uncontroverted testimony, the Assistant United States Attorney stated that her office had no interest in the farm.  She led Arnett's counsel to believe that their oral understanding limited the government to the $3,000 and prohibited further action against Arnett's property.  The written agreement may have been inartfully drafted, but Arnett and his attorney could reasonably perceive it as limiting any forfeitures to $3,000.  This limitation would be consistent with their oral understanding with Schwartz.  Although the written plea agreement does not address the key question of further forfeitures, Arnett's attorney explained that Schwartz's inability to bind the IRS necessitated this silence.  At no time did the United States Attorney's Office indicate to Arnett or his representatives that the written agreement changed their previous oral understanding.  Without such an express warning, it was reasonable for Arnett to rely on the original oral understanding which, in return for his guilty plea, safeguarded his farm.

<u>Arnett</u>, 804 F.2d at 1203.

---

[40]  <u>See</u> <u>e.g.</u>, Government's Exhibit "6" for IRS Administrative Files for Excise Tax Assessment against Reeves, at Bate-stamped Nos. IRS002-IRS015.

[41]  <u>See</u> Reeves' Memorandum, at pp. 7-12.

Arnett is distinguishable from this case.  First, here, unlike in Arnett, Reeves has failed to produce any evidence that any discussions occurred between the IRS and/or the prosecuting attorneys and Reeves and/or his counsel with regard to the civil tax liabilities that Reeves may owe for the periods covering 1994 through 1997, including the types and amount of such taxes, or that any such discussions occurred with regard to the  settlement or compromise of such tax liabilities.

Second, Arnett's written plea agreement mentioned and expressly provided for forfeiture of the sum of $3,000.  However, Reeves' written Plea Agreement made no mention of Reeves' civil tax liabilities, let alone any purported settlement or compromise of such liabilities.  Thus, Arnett's plea agreement expressly limited the forfeiture amount to $3,000, whereas Reeves' Plea Agreement made no mention of Reeves' civil tax liabilities or any agreement to settle or compromise such tax liabilities.  See e.g., Arnett, 804 F.2d at 1202-1204.

Reeves' attempts at classifying the forfeiture of properties, which he agreed to in the Plea Agreement, as some settlement payment for his civil tax liabilities must be rejected.  The fact that Reeves agreed to forfeit cash and property as part of his Plea Agreement is irrelevant to the civil tax liabilities due and owing by him and/or any settlement or compromise of such tax liabilities.  See Reeves' Exhibit "H," at p. 1.  The forfeiture provision contained in Reeves' Plea Agreement pertained to properties

involved with or traceable to money laundering offenses.[42]  Because Reeves agreed to

forfeit certain properties, the United States Attorney, in turn, agreed to recommend that

no fine be imposed for the money laundering charge for which Reeves agreed to plead

guilty.  The Court concurred with the recommendation and, as a result, ordered that no

fine be imposed.[43]  Had a fine been imposed, it could not have been any greater than

$250,000.[44]

     The forfeiture provision in the Plea Agreement was a sanction which the parties

agreed as a result of Reeves' guilty plea.[45]  The forfeiture of properties is not a payment of

civil tax liabilities.  An agreement to forfeit property traceable to money laundering

activities cannot *now* be reclassified by Reeves as an agreement to settle or compromise

his civil tax liabilities.

     As was previously discussed in the government's motion, <u>Creel</u> is inapposite to

the facts present here.  For the reasons described in the Government's Memorandum, at

pages 13 through 16, the unique set of facts present in <u>Creel</u> are not present in this case.

No evidence exists that Reeves' civil tax liabilities were "inextricably intertwined" with

---

[42]  <u>See</u> <u>e.g.</u>, Government's Exhibit "2," at pp. 4-5; GSMF, at ¶¶ 13-14 and 20-21; Government's Memorandum, at pp. 7 and n. 12.

[43]  <u>See</u> <u>e.g.</u>, Government's Exhibit "2," at pp. 4-5; GSMF, at ¶¶ 13-14 and 20-21; Government's Memorandum, at pp. 7 and n. 12.

[44]  <u>See</u> <u>e.g.</u>, Government's Exhibit "2," at pp. 2-3 and 9; GSMF, at ¶ 14.

[45]  <u>See</u> <u>e.g.</u>, Government's Exhibit "2," at pp. 4-5; GSMF, at ¶¶ 13-14 and 20-21; Government's Memorandum, at pp. 7 and n. 12.

the non-tax offenses for which he was indicted or the non-tax offense for which he

ultimately pled guilty. There is simply nothing in the Plea Agreement that even mentions

Reeves' civil tax liabilities, let alone provides for any purported agreement to settle or

compromise such tax liabilities. The evidence here, unlike in Creel, does not warrant a

finding that the Plea Agreement discharged Reeves' civil tax obligations.

Applying objective standards to the facts here, Reeves could not have reasonably

understood that his Plea Agreement included a settlement or compromise of his civil tax

liabilities. The excise tax assessment is neither inconsistent nor prohibited by the terms

of the written Plea Agreement. As a result of the above, the excise tax assessment can be

neither a violation nor a breach of the Plea Agreement. Thus, Reeves' motion should be

denied and the government's motion should be granted.

II.     **REEVES HAS FAILED TO PROVE THAT THE PLEA AGREEMENT
        PROHIBITS THE IRS FROM RELYING ON HIS TESTIMONY TO
        MAKE THE EXCISE TAX ASSESSMENT.**

Reeves has failed to meet his burden of proof that the Plea Agreement precludes

the IRS from relying on or using Reeves' trial and deposition testimony in order to

determine and/or assess any excise taxes, including penalties and interest, against him for

the periods covering 1994 through 1997. In support of his claims, Reeves attempts to use

extrinsic evidence, such as the affidavits of himself and Ott.[46] The United States

maintains that consideration of any extrinsic evidence, such as affidavits, is inappropriate

---

[46] See Reeves' Memorandum, at pp. 12-14; Reeves' Exhibit "H," at p. 2; Reeves' Exhibit "I," at p. 2.

1727903.1                              15

in light of the clear and unambiguous language of the written Plea Agreement.  The Court should be limited to interpreting the language contained within the "four corners" of the written Plea Agreement to discern the parties' intent.[47]  The plain language of the written Plea Agreement simply does not result in a conclusion that the IRS is prohibited from relying on or using Reeves' trial and deposition testimony in order to make the excise tax assessment.[48]

Even if, however, consideration of extrinsic evidence is allowed, the evidence offered by Reeves is insufficient to meet his burden.  Reeves and Ott, through their respective affidavits, claim that the Plea Agreement precludes the IRS from using Reeves' testimony to determine and assess the excise tax liability owed by Reeves.  In support of their claims, Reeves and Ott rely on subjective beliefs and/or general conclusory allegations.  For instance, Reeves claims that "it was [his] understanding" that the Plea Agreement prohibited the IRS from using his trial and deposition testimony to determine and make the excise tax assessment.  See Reeves' Exhibit "H," at p. 2.  Ott states, in conclusory fashion, "[t]hat the Plea Agreement further precluded [the IRS] from using the trial and deposition of Timothy Joe Reeves in determining and making the assessment."  See Reeves Exhibit "I," at p. 2.

---

[47]  See Government's Memorandum, at pp. 4-9.

[48]  See Government's Memorandum, at pp. 4-9 and 16-22.

Neither affidavit provides any specific allegations as to why the Plea Agreement prohibits the IRS from relying on Reeves' testimony to determine and make the excise tax assessment. Neither affidavit identifies any discussions among the parties with regard to such purported "prohibition." Neither affidavit explains why such purported "prohibition" was not expressly mentioned in the written Plea Agreement despite the parties' knowing inclusion of the integration provision in such agreement, requiring all terms to be included in the written Plea Agreement if they are to be binding.[49] Such subjective beliefs and/or general conclusory allegations are not sufficient to support Reeves' motion and/or to oppose the government's motion.

In addition, Ott's affidavit contains internal contradictions. At one point, she claims "[t]hat the Plea Agreement included both the settlement of civil and criminal proceedings against Timothy Joe Reeves and was intended by [her] to be a global settlement agreement, thereby precluding the [excise tax assessment]." See Reeves' Exhibit "I," at ¶ 7. However, on the other hand, she claims that the Plea Agreement further precluded the IRS from using Reeves' trial and deposition testimony in determining and making the excise tax assessment. See Reeves' Exhibit "I," at ¶ 8. If the parties had entered into a global settlement, as Ott claims, there would be no need for the parties to enter into a specific agreement prohibiting the IRS from using Reeves' testimony to make the excise tax assessment.

---

[49] See Government's Memorandum, at pp. 6-9 and 16-22.

In support of his claim, Reeves also cites to certain selective provisions from his cooperation agreement, contained in the Plea Agreement, at § III(C).[50]  In particular, Reeves claims that "[t]he Plea Agreement specifically provides that 'any information [he] truthfully discloses to the government during the course of his cooperation, concerning related offenses, will not be used against him, directly or indirectly.'"[51]  Based on this provision, Reeves erroneously concludes that the Plea Agreement precludes the IRS from using Reeves' trial and deposition testimony to make the excise tax assessment.

Reeves' reliance on these selective provisions is misleading.[52]  When the provisions pertaining to Reeves' cooperation agreement are read in their entirety, Reeves' selective provisions cannot be read to prohibit the IRS from relying on or using Reeves' testimony to determine and make the excise tax assessment.[53]  Instead, the provisions of the cooperation agreement can only be read to conclude that the United States Attorney is prohibited from using any such testimony for the purpose of prosecuting Reeves for any related "criminal" offenses as long as Reeves has not breached the cooperation agreement.  The term "offenses," when used in its ordinary and usual meaning, refers to

---

[50]  See e.g., Reeves' Memorandum, at pp. 5 and 12-14.

[51]  See e.g., Reeves' Memorandum, at p. 13.  See also, Government's Exhibit "2," at pp. 3 and 5-7, at § III(C)(2).

[52]  See Government's Exhibit "2," at pp. 3 and 5-7, at § III(C).

[53]  See Government's Exhibit "2," at pp. 3 and 5-7, at § III(C).

"criminal offenses."[54]

When the cooperation agreement is read in its entirety, it shows that any breach of such agreement by Reeves would allow the government to use the information disclosed by him during the course of his cooperation in any further criminal prosecution of him.[55] No provision in the cooperation agreement either discusses or acknowledges the government's use of any such information in any civil proceedings. This omission is

------

[54] See Government's Memorandum, at pp. 17-18. See also, Government's Exhibit "A," at pp. 9-10.

[55] If Reeves had breached the cooperation agreement, the Plea Agreement provided for the following consequences:

> 3.    If [Reeves] has failed or should fail in any way to fulfill completely his obligations under this agreement, then the government will be released from its commitment to honor all of its obligations to him. Thus, if at any time [Reeves] should knowingly and willfully withhold evidence from the government investigators or attorneys prior to or during his testimony before grand juries or in trials, then the government will be free  (1) to prosecute him for perjury, false declaration, false statement, and /or obstruction of justice (18 U.S.C. Section 1621, 1623, 1001, 1503); (2) to prosecute him for all violations of federal criminal law which he has committed; (3) to use against him in all of those prosecutions and sentencings the information and documents that he has himself disclosed or furnished to the government during the course of his cooperation; (4) to recommend a maximum sentence; and (5) to seek forfeiture of any and all forfeitable properties of [Reeves].  The parties agree to submit to the court, to be decided by a preponderance of the evidence standard, the question of whether [Reeves] has breached this agreement.

See Government's Exhibit "2" for Plea Agreement, at § III(C)(3).  In § III(C)(3) of the Plea Agreement, the reference to "all of the [government's] obligations" followed by a listing of what the government would be free to do as a consequence of Reeves' breach of the cooperation agreement establishes that the government's use of the information provided by Reeves during his cooperation was limited to any further criminal prosecution of him.

further apparent when the cooperation agreement, at § III(C), is compared to the provision governing the inadmissibility of statements made by Reeves during plea discussions, at § III(K)(1)(h).  The latter provision expressly provides that statements made by Reeves during plea negotiations "shall not be admissible in any civil or criminal proceedings against [Reeves]."[56]

### III.    CONCLUSION.

The written Plea Agreement determines the terms of the parties' agreement.  The Plea Agreement never mentions any settlement or compromise of Reeves' civil tax liabilities and, as a result, cannot serve as a basis upon which Reeves is discharged from paying the excise tax assessment due and owing by him.  Because the terms of the written Plea Agreement are clear and unambiguous, consideration of extrinsic evidence is inappropriate.  However, even if extrinsic evidence was considered, the evidence shows that the promises *now* claimed by Reeves to be a part of the Plea Agreement simply did not form a part of the inducement or consideration for his guilty plea.  The excise tax assessment, including the IRS's reliance on Reeves' testimony in order to  make such assessment, is not an action that is inconsistent with what Reeves reasonably could have understood when he entered his guilty plea.  Accordingly, and contrary to Reeves' contentions, the government has not violated or breached the Plea Agreement.

---

[56]  See Government's Exhibit "2," at pp. 3 and 11, § III(K)(1)(h).

In view of the above, Reeves' motion should be denied and the government's motion should be granted.  As there exists no genuine issue of material fact, the United States is entitled to judgment, as a matter of law, Reeves' claims should be dismissed, and judgment should be entered in favor of the United States and against Reeves in the sum of $1,967,844, plus interest thereon as is required by law.

Dated this 31st day of May, 2006.

LEURA GARRETT CANARY
United States Attorney


s/ Lynne M. Murphy
LYNNE M. MURPHY
Trial Attorney, Tax Division
U.S. Department of Justice
La. Bar No. 20465
D.C. Bar No. 485928
P.O. Box 14198
Ben Franklin Station
Washington, D.C.  20044
Telephone:    (202) 514-5881
Facsimile:    (202) 514-9868
E-mail:       Lynne.M.Murphy@usdoj.gov

## CERTIFICATE OF SERVICE

**IT IS HEREBY CERTIFIED** that service of the foregoing Opposition of United

States to Plaintiff Timothy Joe Reeves' Motion for Summary Judgment, including

accompanying Exhibits, has this 31st day of May, 2006 been made by electronically filing

the documents with the Clerk of Court using the CM/ECF system which will

automatically send e-mail notification of such filing to the following attorneys of record:

        William W. Hinesley, Esquire
        whinesley@JHFC-law.com

        G. David Johnston, Esquire
        djohnston@jhfc-law.com

        L. Drew Redden
        melissa@rmclaw.com

                s/ Lynne M. Murphy
                Trial Attorney, Tax Division
                U.S. Department of Justice
                P.O. Box 14198
                Ben Franklin Station
                Washington, D.C.  20044