IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TIMOTHY JOE REEVES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 1:05-CV-00542-MHT |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

### DECLARATION OF A. GILLIS DOUGLASS, III
### RETIRED SPECIAL AGENT FOR THE INTERNAL REVENUE SERVICE,
### CRIMINAL INVESTIGATION DIVISION

I, A. Gillis Douglass, III, declare the following:

1. I retired from the federal government on June 1, 2000. Prior to my retirement, I was employed as a Special Agent for the Internal Revenue Service, Criminal Investigation Division ("CID Agent"), and was employed in that position for approximately twenty-three (23) years.

2. My official duties included, *inter alia*, supervising and handling criminal investigations of persons suspected of committing federal tax offenses. My duties also included assisting and participating in certain criminal investigations of persons suspected of committing federal non-tax offenses, such as money laundering.

**CRIMINAL INVESTIGATION:**

3. In the late 1990's and at the request of Charles A. Bravata, Sr., Special Agent for the Federal Bureau of Investigation, I was assigned to assist in the criminal investigation of Timothy Joe Reeves and his confederates for certain non-tax offenses committed by them,



including operating an illegal gambling business and engaging in money laundering in or around Dothan, Alabama during the periods covering 1994 through 1997. See United States v. Billy Joe Reeves, et al., Case No. 99-CR-0013-S (M.D. Ala.). See also, Government's Exhibit "1" for Indictment filed in United States v. Billy Joe Reeves, et al., Case No. 99-CR-0013-S (M.D. Ala.), on February 3, 1999.

4. During the years of my employment as a CID agent, I acquired extensive knowledge and experience in investigating money laundering transactions.

5. I understood that Bravata had been advised of my knowledge and expertise in the money laundering area and requested that I be assigned to the criminal investigation in order that I could handle the money laundering aspects of the investigation. In this respect, my involvement with the criminal investigation consisted of participating in the execution of search warrants, monitoring the return of certain grand jury subpoenas, interviewing witnesses and analyzing business and financial records. See e.g., Government's Exhibit "6" for Court-authorized Search Warrants and Affidavit Attachment of Charles A. Bravata, Sr., at Bate-stamped Nos. IRS017-IRS034 and IRS071-IRS128.

6. During the criminal investigation, I was never assigned and/or directed to determine what, if any, tax offenses may have been committed by Reeves and/or his confederates during the periods covering 1994 through 1997. As a result, I never made such a determination.

7. During the criminal investigation, I was never assigned and/or directed to determine what type of taxes, if any, may have been owed by Reeves and/or his confederates during the periods covering 1994 through 1997. As a result, I never made such a determination.

1694780.1

8. During the criminal investigation, I was never assigned and/or directed to determine the amount of taxes, if any, that may have been owed by Reeves and/or his confederates during the periods covering 1994 through 1997. As a result, I never made such a determination.

9. I understood that the criminal investigation was limited to investigating non-tax offenses, such as operating an illegal gambling business and engaging in money laundering activities.

10. The amount of any civil tax liabilities that may have been due and owing by Reeves and/or his confederates was not an element for indicting or prosecuting them for the non-tax offenses that were the subject of the criminal investigation.

11. The criminal investigation ultimately led to the indictment of Reeves and his confederates for various non-tax offenses, including conducting a specified unlawful activity (i.e., illegal gambling business) and engaging in certain money laundering activities. The illegal gambling business primarily involved the receipt of wagers placed on professional and college football games during 1994 through 1997. See e.g., Government's Exhibit "1," supra, at pp. 1-2.

12. The criminal investigation did not lead to the indictment of Reeves and/or his confederates for any tax offenses. See e.g., Government's Exhibit "1," supra.

13. The Indictment also alleged that if Reeves was convicted of the money laundering offenses, identified therein, he would be required to forfeit certain property, among which included any and all property involved in the money laundering offenses or any property traceable to such property. See Government's Exhibit "1," supra, at pp. 21-22.

14. On October 14, 1999, Reeves entered into a written Plea Agreement. <u>See</u> Government's Exhibit "2" for Plea Agreement of Timothy Joe Reeves filed in <u>United States v. Billy Joe Reeves, et al.</u>, Case No. 99-CR-0013-S (M.D. Ala.), on October 14, 1999.

15. I was present during the time when some of the plea discussions occurred between Reeves, Reeves' counsel and the prosecuting attorneys for the United States Attorney's Office for the Middle District of Alabama. <u>See</u> Government's Exhibit "2," <u>supra</u>.

16. Although I was present during some of the plea discussions, I am not aware of any discussions involving any settlement or compromise of any of the civil tax liabilities that may have been due and owing by Reeves for the periods covering 1994 through 1997.

17. I also am not aware of the making or offering of any promises to settle or compromise any of the civil tax liabilities that may have been due and owing by Reeves for the periods covering 1994 through 1997.

18. I never represented to Reeves and/or his counsel that I had any authority to settle or compromise any of the civil tax liabilities that may have been due and owing by Reeves for the periods covering 1994 through 1997.

19. I never represented to Reeves and/or his counsel that I had any authority to control any actions that the IRS might take in determining, assessing or collecting any tax liabilities that might have been due and owing by Reeves for the periods covering 1994 through 1997.

**<u>CIVIL FORFEITURE PROCEEDINGS:</u>**

20. In addition to the criminal matters, discussed in paragraphs 3 through 19, above, I was aware of various civil forfeiture proceedings that were commenced to seek, in pertinent part, forfeiture of various properties in which certain persons claimed to have an interest.

21. The civil forfeiture proceedings pertained to the properties involved with the money laundering offenses that arose out of the criminal proceedings involving Reeves and his confederates. See Government's Exhibit "1," supra, at pp. 21-22. See also, ¶ 13, supra.

22. After Reeves entered into the Plea Agreement on October 14, 1999, he was deposed in the civil forfeiture proceedings and, during such deposition, provided testimony with regard to the operations of his illegal gambling business. See e.g., Government's Exhibit "6" for Deposition Transcript of Timothy Joe Reeves, supra, at Bate-stamped Nos. IRS176-IRS220.

23. The deposition was taken by John Harmon, Assistant United States Attorney, on February 3, 2000. See Government's Exhibit "6," supra, at Bate-stamped No. IRS178.

24. At Harmon's request, I attended the deposition. My attendance was necessary because of the knowledge that I had acquired during the criminal investigation with regard to the money laundering offenses and the properties subject to forfeiture on account of such money laundering offenses. See Government's Exhibit "6," supra, at Bate-stamped No. IRS178. See also, ¶¶ 4-5 and 13, supra.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 19th day of May, 2006.

_____
A. GILLIS DOUGLASS, III