# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| TIMOTHY JOE REEVES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:05-CV-00542-MHT |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## OPPOSITION OF UNITED STATES
## TO PLAINTIFF'S MOTION FOR TRIAL BY JURY

_____The defendant, United States of America, opposes the Motion for Trial By Jury filed by Plaintiff, Timothy Joe Reeves, on May 14, 2007.  For the reasons discussed below, Reeves' motion should be denied.  Reeves' request for a jury trial is untimely.  He has provided no explanation as to why he failed to make his request within the time prescribed by Rule 38(b) of the Federal Rules of Civil Procedure or why he waited until one month before trial to make such a request.  Reeves' failure to provide any explanation for his dilatory request for a jury trial is sufficient, as a matter of law, to deny his motion.

Denial of Reeves' jury trial request also is necessary for a number of other reasons. First, the evidence and issues in this case show that this case is best decided by the Court, and not tried to a jury.  Even if a jury trial was granted, the evidence sought to be offered by Reeves in this case is legally insufficient and would not survive a motion for judgment as a matter of law in favor of the United States. Fed. R. Civ. P. 50(a).  Second, a denial of Reeves' request is

2457995.1

necessary to prevent undue prejudice to the United States, which has conducted discovery and prepared for trial for two years based on the understanding that this matter, if trial was necessary, would be tried by the Court, and not a jury.  Therefore, since allowing Reeves' dilatory request at this late stage in the proceedings would only work a substantial hardship on the United States, Reeves' request for a jury trial should be denied.

I.    **BACKGROUND.**

On June 8, 2005, plaintiff, Timothy Joe Reeves, filed a complaint to commence this action, seeking, *inter alia*, to recover a refund of certain wagering excise taxes, including penalties and interest, assessed against him for the tax periods ended September 30, 1994 through January 31, 1995, September 30, 1995 through January 31, 1996 and September 30, 1996 through January 31, 1997.  (Doc. 1).  In this action, Reeves seeks a refund of $1,500, plus interest thereon.  On August 23, 2005, the defendant, United States, answered Reeves' complaint and filed a counterclaim, seeking a judgment against Reeves for the remaining unpaid balance of the assessment, totaling $1,967,844, plus interest thereon.  (Doc. 7).  On September 9, 2005, Reeves answered the government's counterclaim.  (Doc. 9).

On January 3, 2006, Reeves filed an amended complaint, claiming that the excise tax assessment was unconstitutional in violation of the Fifth and Eighth Amendments to the U.S. Constitution.  (Doc. 14).  On January 12, 2006, the United States answered the amended complaint and renewed its original counterclaim previously filed in August 2005.  (Doc. 15). On January 24, 2006, Reeves filed an answer to the government's renewed counterclaim.  (Doc. 18).

_____No jury demand was included in any of the parties' pleadings.  On September 21, 2005, the Court entered a Scheduling Order.  (Doc. 11).  Pursuant to the Court's Scheduling Order, discovery lasted for approximately six (6) months and ended on April 4, 2006.  (Doc. 11).  On May 5, 2006, the parties filed cross-motions for summary judgment and those cross-motions remain pending.  (Docs. 25 and 28).  Trial of this matter, while initially set for July 17, 2006, has been continued three times, twice at the instance of the Court and once by Reeves.  (Docs. 20 and 36).  In August 2006, the Court ordered that the nonjury trial of this matter be held on June 18, 2007.  (Doc. 36).  By Pretrial Order entered on May 16, 2007, the Court has rescheduled trial for July 12, 2007.

A  pretrial conference was held on May 11, 2007, and at that conference, Reeves made no mention of his intention to request a jury trial.  (Doc. 38).  In fact, the parties' proposed pretrial order filed on May 9, 2007 used the format that is typically used for a nonjury trial.  On May 14, 2007, and relying on Fed. R. Civ. P. 39(b), Reeves filed a motion, requesting "a trial by jury of all issues in this case before the Court."  (Doc. 41).  Reeves has failed to provide any reason or explanation for his failure to request a trial by jury within the time prescribed by Fed. R. Civ. P. 38(b).  For the reasons described below, Reeves' motion should be denied.

II.    **DISCUSSION.**

**This Court Should Deny Reeves' Belated "Jury Trial" Request Under All Factors Established By the Eleventh Circuit.**  Rule 38 of the Federal Rules of Civil Procedure sets forth the requirements for demanding a jury trial.  In this respect, Rule 38 provides, in pertinent

part:

> Any party may demand a trial by jury of any issue triable of right by a jury by . . . serving upon the other parties a demand therefor in writing at any time after the commencement of the action *and not later than 10 days after the service of the last pleading directed to such issue* . . .

Fed. R. Civ. P. 38(b) (emphasis added).  If a party fails to serve and file a demand as required by Rule 38, such failure "constitutes a waiver by the party of a jury trial."  Fed. R. Civ. P. 38(d).  Rule 39, however, allows a party an opportunity to obtain relief from that waiver.[1]  In this regard, Rule 39(b) provides, in pertinent part:

> Issues not demanded for trial by jury as provided in Rule 38 shall be tried by the court; but, notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by a jury of any or all issues.

Fed. R. Civ. P. 39(b).

Although courts look favorable upon a Rule 39(b) motion absent "strong and compelling reasons to the contrary,'"[2] the trial court has "broad discretion" in deciding the motion and will be reversed "only for an abuse of discretion."  Parrott, 707 F.2d at 1267.  Moreover, the Eleventh Circuit has instructed that trial courts should consider the following five factors in deciding a Rule 39(b) motion:

> (1) whether the case involves issues which are best tried to a jury; (2) whether granting the motion would result in a disruption of the court's schedule or that of the adverse party; (3) the degree of prejudice to the adverse party; (4) the length of the delay in

---

[1]  See e.g., Rhodes v. Amarillo Hospital Dist., 654 F.2d 1148, 1154 (5th Cir. 1981).

[2]  Parrott v. Wilson, 707 F.2d 1262, 1267 (11th Cir. 1983) (affirming trial court's denial of plaintiff's untimely request for a jury trial that was made more than a year and a half after defendants answered the original complaint) (quoting, Swofford v. B&W, Inc., 336 F.2d 406, 408 (5th Cir. 1964); Cox v. C.H. Masland & Sons, Inc., 607 F.2d 138, 144 (5th Cir. 1979)).

having requested a jury trial; and (5) the reason for the movant's tardiness in requesting a jury trial.

<u>Parrott</u>, 707 F.2d at 1267 (citations omitted).[3]  The Eleventh Circuit has further instructed that "[a]lthough the normal practice in the district court is to balance all of the factors enumerated above, when reviewing a lower court's denial of a belated jury request . . . considerable weight [is given] to the movant's excuse for failing to make a timely jury request.  If that failure is due to mere inadvertence on the movant's part, we generally will not reverse the trial court's refusal to grant a 39(b) motion."[4]

Reeves' excuse here is not merely insufficient, it is nonexistent.  Indeed, all five of the factors weigh heavily in favor of denying Reeves' request.  Accordingly, Reeves' Rule 39(b) motion should be denied.

---

[3]  <u>See also</u>, <u>United States v. Unum, Inc.</u>, 658 F.2d 300, 303 (5th Cir. 1981) (affirming trial court's denial of defendant's untimely request for a jury trial on the grounds that defendant's explanation for the significant delay in submitting the request was not "persuasive" and that "[f]orcing the plaintiff to change its trial strategy on such short notice would have worked a substantial hardship"); <u>Williams v. J.F.K. Intern. Carting Co.</u>, 164 F.R.D. 340, 342 (S.D.N.Y. 1996) (denying plaintiff's untimely request for a jury trial because, *inter alia*, the parties have proceeded in discovery for ten months with the understanding that the case would be tried in a bench trial and plaintiff had ample opportunities to request a jury trial but declined to do so until eight months after the action was removed); <u>Noddings Inv. Group, Inc. v. Kelley</u>, 881 F. Supp. 335, 337 (N.D. Ill. 1995) (denial of defendants' belated jury trial request was necessary to avoid unnecessarily prolonging the case and prejudicing the plaintiff by making the litigation more expensive).

[4]  <u>Parrott</u>, 707 F.2d at 1267 (<u>citing</u>, <u>Rhodes</u>, 654 F.2d at 1154; <u>Mesa Petroleum Co. v. Coniglio</u>, 629 F.2d 1022, 1029 (5th Cir. 1980); <u>Bush v. Allstate Ins. Co.</u>, 425 F.2d 393 (5th Cir. 1970) (other citation omitted)).  <u>See also</u>, <u>United States v. Lochamy</u>, 724 F.2d 494, 499 (5th Cir. 1984) (affirming trial court's denial of taxpayers' request for a jury trial in a wagering excise tax case when the request was made some 21 months after final joinder of issues in the case and no explanation was given for the lengthy delay in making the request) ( <u>citing</u>, <u>Rhodes</u>, 654 F.2d at 1154); <u>Mesa Petroleum</u>, 629 F.2d at 1029 (affirming trial court's denial of defendant's untimely request for a jury trial that was made after the pretrial conference, more than two years after the complaint was filed, and less than one month before the trial date).

**This Case Is Best Tried By the Court, and Not a Jury.**  The first factor is whether this case involves issues that are best tried to a jury.  This factor is not met.  Here, even if a jury trial was granted, it is highly unlikely that the matter would ultimately go to the jury for deliberation.  The evidence sought to be offered by Reeves in this case is legally insufficient and would not withstand a motion for judgment as a matter of law in favor of the United States.  See Fed. R. Civ. P. 50(a).  It is for this precise reason that the parties submitted cross-motions for summary judgment, which are pending.  See Fed. R. Civ. P. 56.

There are two major issues present in this case, neither of which is best tried to a jury.  The first issue involves determining if the written plea agreement executed by Reeves on October 14, 1999 settled Reeves' civil tax liabilities at issue in this case.  See e.g., Doc. 28-2, at pp. 3-11.  If no such settlement was effectuated, the second issue is whether the excise tax assessment is reasonable in light of Reeves' failure to maintain adequate books and records of his bookmaking operations.  See e.g., Doc. 28-2, at pp. 22-30.  If the IRS's assessment is found to be reasonable, the United States is entitled to judgment in its favor for the sum of $1,967,844, plus interest thereon as is required by law.

With regard to the first issue, interpreting the written plea agreement is necessary in order to determine if such agreement effectuated a settlement or compromise of Reeves' civil tax liabilities.  The interpretation of a written plea agreement is a question of law to be decided by the Court, and not a jury.  See e.g., Doc. 28-2, at pp. 4-6.  In interpreting the written plea agreement, the parties' intent must be determined from examining the "four corners" of the document, without considering any extrinsic evidence.  See e.g., Doc. 28-2, at pp. 4-6.  Even if

a jury could interpret the written plea agreement, the Court would be better equipped to handle such a task by virtue of its prior experience in interpreting such agreements. The written plea agreement here simply does not provide for the settlement or compromise of Reeves' civil tax liabilities. See e.g., Doc. 28-2, at pp. 3-11. Indeed, the Court, during the May 11th pretrial conference, advised that it did not believe that the plea agreement settled Reeves' civil tax liabilities at issue in this case.

If the written plea agreement does not effectuate a settlement of Reeves' civil tax liabilities, the IRS is not precluded from assessing the wagering excise taxes, including penalties and interest, against Reeves for the periods covering 1994 through 1997. Thus, the second issue must be decided. That issue requires determining whether the IRS's assessment is reasonable. See e.g., Doc. 28-2, at pp. 22-30. This issue too is best decided by the Court in light of the evidence being offered, coupled with the need for a full understanding of the parties' respective burdens of proof.

With respect to this second issue, the evidence offered by Reeves during discovery in this case shows that there is no doubt that he was in the business of accepting unauthorized wagers during the periods covering 1994 through 1997.[5] The evidence offered by Reeves also confirms that he did not keep any books and records of his wagering activities conducted during the periods covering 1994 through 1997. See e.g., Doc. 28-7, at pp. 158 and 174-176. See also, Doc. 28-2, at p. 24. In the absence of such records, the IRS may reconstruct the wagering

_____

[5] See e.g., Doc. 28-7 for Affidavit of Ronald Lynn Cherry executed on January 30, 2006, at p. 174, ¶ 2; Doc. 28-7 for Reeves' Expert Report prepared by David W. Parsons, CPA dated January 30, 2006 ("Parson's report"), at pp. 156-160; Doc. 28-7 for Judgment in a Criminal Case entered on February 10, 2000 in United States v. Ronald Lynn Cherry, Case No. 1:99-CR-00013-004 (M.D. Ala), at pp. 185-191.

activities of the taxpayer "by any reasonable method" in order to arrive at the wagering base upon which the excise tax should be assessed.  When the wagering amounts are known for a portion of the tax periods, the amounts may be projected over time by using one of two methods, the "wagers accepted per day" method or the "wagers accepted per game" method. See e.g., Doc. 28-2, at pp. 24-26.

Because Reeves did not keep any books or records of his bookmaking operations, the IRS used the "wagers accepted per day method" to determine the excise tax assessment.  By using this method, the IRS determined that excise taxes, totaling $585,876, were due in connection with the wagering activities conducted by Reeves during the periods covering 1994 through 1997.  The IRS's wagering estimate is based primarily on the FBI report that was prepared during the criminal investigation based on court-authorized wire-tap communications that occurred over a seven-day period.[6]  See Doc. 28-6, at pp. 97-110 and 257-269.

The IRS's assessment is entitled to a presumption of correctness unless the taxpayer can prove that the assessment is erroneous.  See Doc. 28-2, at pp. 23-26.  In this respect, a taxpayer bears a heavy burden to overcome the presumption when he has not maintained adequate books and records of his wagering activities.  See Doc. 28-2, at pp. 24-26.  For instance, evidence based on speculation and conjecture are not sufficient.  Further, the submission of uncorroborated, unsubstantiated or self-serving testimony is not sufficient to rebut the

---

[6]  Because the seven-day period occurred during the college bowl season, the government retained an expert, Dr. George Ignatin, to opine on the excise tax liability due and owing from Reeves for the periods covering 1994 through 1997.  Dr. Ignatin computed the projected excise tax liability by using the "wagers accepted per game" method.  By applying this method, Dr. Ignatin arrived at a figure of $499,360 for the excise tax liability.  See Doc. 28-7, at pp. 193-197.  Dr. Ignatin's opinion confirms the reasonableness of the IRS's assessment.

presumption of correctness that the IRS's assessment is entitled.  See Doc. 28-2, at pp. 25-26.

Here, Reeves attempts to offer evidence to rebut the presumption of correctness, but his evidence is woefully deficient in overcoming the presumption and should not be permitted to go to a jury for deliberation.  Specifically, Reeves attempts to challenge the assessment by offering Parson's report.  See Doc. 28-7, at pp. 155-183.  In that report, Parson claims that Reeves' excise tax liability totals $158,938, by using a "wagers accepted per day" method.  See Doc. 28-7, at p. 156.  However, in arriving at this number, Parson primarily relies on "legally insufficient" information that he obtained from:  **(1)** the oral representations of Reeves and Ronald Lynn Cherry, the person who managed Reeves' illegal bookmaking operations during 1994 through 1997; and **(2)** an unqualified analysis performed by Cherry of some, but not all, of the court-authorized wire-tap communications that occurred during the period from December 27, 1996 through January 12, 1997.  See Doc. 28-7, at pp. 155-183.[7]

Since Reeves failed to maintain adequate books and records of his wagering activities, the evidence sought to be offered by him to overcome the presumption of correctness due the IRS's assessment is legally insufficient and is, in fact, the type of evidence that courts

---

[7]  Parson's report, in part, relies on Cherry's baseless and unsubstantiated allegations that he "was unable to analyze and review the [government's wire-taps for the] 6 days of December 28, 1996, through January 2, 1997, as the government has not yet produced the tapes for that portion of the wiretap period."  See Doc. 28-7, at pp. 174-175, ¶ 4.  This allegation is baseless and unsubstantiated for a number of reasons.  First, transcripts of the court-authorized wire-tap communications for those days are in Reeves' possession.  Indeed, Reeves produced the transcripts to the United States during discovery in this case.  Second, to the extent that Cherry did not have the requisite tapes and/or transcripts to perform his unqualified analysis, Reeves was not precluded from obtaining a Rule 6(e) order to secure the information.  However, Reeves made no effort to obtain a Rule 6(e) order.  Third, Reeves made no attempts to depose the FBI Forensic Examiner who prepared the FBI report on which the IRS relied.  Fourth, Cherry does admit that he was able to perform an unqualified analysis of the wire-tap communications that occurred on December 27, 1996, and based on that analysis, he arrived at a wagering amount of $56,000 for that day.  See e.g. Doc. 28-7, at pp. 160-161 and 174-175, at ¶ 4.  This $56,000 wagering amount is consistent with the wagering amount determined by the FBI for that day.  Compare Doc. 28-7, at pp. 160-161 with Doc. 28-6, at pp. 263 and 268.

repeatedly decline to accept as an evidentiary basis to challenge IRS's assessments in wagering cases.  See e.g., Doc. 28-2, at pp. 25-26 and 28-30.  Thus, even if a jury trial was granted, the evidence that Reeves seeks to offer to challenge the IRS's assessment is woefully deficient and would not be legally sufficient to withstand a motion for judgment as a matter of law.  Fed. R. Civ. P. 50(a).  In view of the above, this case is best tried by a Court, and not a jury.  As a result of the above, the first factor weighs heavily in favor of denying Reeves' untimely request for a jury trial.

**Schedules May Be Disrupted.**  The second factor is whether granting the Rule 39(b) motion would disrupt the schedule of the Court or the government.  Because of the short notice given by Reeves on May 14, 2007, coupled with a trial date of July 12, 2007, the United States schedule will be disrupted if the Court grants Reeves' request for a jury trial.  The government will certainly have to re-allocate its resources in order to prepare for a jury trial, instead of a bench trial.  The government's schedule (and possibly the Court's) also may be disrupted if Reeves' belated jury trial request leads to a further continuance of the trial.  This second factor weighs heavily in favor of denying Reeves' Rule 39(b) motion.

**The United States Would Be Severely Prejudiced.**  The third factor is the degree of prejudice to the United States if the motion is granted.  Here, the United States will be severely prejudiced.  The United States has prepared for trial based on the assumption that a trial, if necessary, would be a bench trial.  The United States conducted discovery under that

assumption.  The United States undertook its discovery with an eye toward there being an experienced fact finder knowledgeable about the law, rather than a lay jury.

If the Court grants Reeves' Rule 39(b) motion, the United States will have to change its trial strategy significantly.  This change on such short notice will cause a substantial hardship for the government.  The government will be required to expend additional time and costs to change its trial strategy at this late stage in the litigation, from a bench trial to a jury trial.  Further, if trial is necessary, a jury trial will only unnecessarily and unduly prolong the trial and cause the United States to incur additional costs that it would not otherwise incur if a bench trial is held.  See also, discussion, *supra*, at pp. 5-10.  This third factor weighs heavily in favor of denying Reeves' belated request for a jury trial.

**The Lengthy Delay In Making The Jury Trial Request Is Unacceptable.**  The fourth factor is the length of Reeves' delay in requesting a jury trial.  Reeves filed his complaint almost two years ago.  Discovery ended more than a year ago.  Cross-motions for summary judgment were filed approximately one year ago and those motions are pending.  A pretrial conference was held six days ago.  The trial has been continued three times and is due to be held, if necessary, on July 12, 2007.  Despite the status of the proceedings, Reeves now requests a jury trial, although nothing has changed other than the Court having indicated, at the May 11th pretrial conference, that it did not believe the plea agreement effectuated a settlement or compromise of Reeves' civil tax liabilities that are at issue in this case.  One might infer that

Reeves' belated jury request is not coincidental and is nothing more than a poor attempt to conduct some last minute forum shopping.  See e.g., Noddings, 881 F. Supp. at 337.  This fourth factor weighs heavily in favor of denying Reeves' dilatory request for a jury trial.

**Reeves Provides No Explanation for His Delay In Making His Jury Trial Request.**

The fifth factor involves an examination of the reasons why Reeves delayed in filing his motion for a jury trial pursuant to Rule 39(b).  Reeves' reasons are nonexistent.  Nowhere in Reeves' motion does he provide *any* explanation or state *any* reason why he failed to request a trial by jury within the time prescribed by Rule 38(b).  This fifth factor weighs heavily in favor of denying Reeves' request for a jury trial.  As a matter of fact in the Eleventh Circuit, this factor, if not met, requires a denial of Reeves' dilatory request, as a matter of law.  See Parrott, 707 F.2d at 1267.  Nor should this Court permit Reeves to come forward in a reply brief and offer after-the-fact rationales.

III.    **CONCLUSION.**

In summary, Reeves has failed to make a timely demand for a jury trial as to any issues challenging his personal liability of the unpaid excise tax assessment, including the validity and amount thereof, and therefore, has waived any right to a trial by jury on those issues.  There are strong and compelling reasons, as discussed above, warranting denial of Reeves' belated

request for a jury trial.  Thus, Reeves' Rule 39(b) motion should be denied.

Dated this 17th day of May, 2007.


LEURA GARRETT CANARY
United States Attorney


s/ Lynne M. Murphy
LYNNE M. MURPHY
Trial Attorney, Tax Division
U.S. Department of Justice
La. Bar No. 20465
D.C. Bar No. 485928
P.O. Box 14198
Ben Franklin Station
Washington, D.C.  20044
Telephone:     (202) 514-5881
Facsimile:     (202) 514-9868
E-mail:        lynne.m.murphy@usdoj.gov

<u>**CERTIFICATE OF SERVICE**</u>

    **IT IS HEREBY CERTIFIED** that service of the foregoing Opposition of United

States to Plaintiff's Motion for Trial By Jury has this 17th day of May, 2007 been made by

electronically filing the documents with the Clerk of Court using the CM/ECF system which

will automatically send e-mail notification of such filing to the following attorneys of record:

        William W. Hinesley, Esquire
        whinesley@JHFC-law.com

        G. David Johnston, Esquire
        djohnston@jhfc-law.com

        L. Drew Redden
        melissa@rmclaw.com

            s/ Lynne M. Murphy
            Trial Attorney, Tax Division
            U.S. Department of Justice
            P.O. Box 14198
            Ben Franklin Station
            Washington, D.C.  20044