IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION


TIMOTHY JOE REEVES,           )
                              )
     Plaintiff,               )
                              )      CIVIL ACTION NO.
     v.                       )      1:05cv542-MHT
                              )          (WO)
UNITED STATES OF AMERICA,     )
                              )
     Defendant.               )

OPINION

Plaintiff Timothy Joe Reeves has brought this lawsuit against defendant United States of America, claiming that his plea agreement in a criminal case precludes either a later civil assessment by the Internal Revenue Service ("IRS"), or use of certain evidence in making that assessment, for excise tax regarding his participation in an illegal gambling ring. Reeves seeks a declaration that the assessment is illegal and a refund on taxes already paid. The government responds that its assessment is valid and, in its counterclaim, asks this court to enter judgment against Reeves in the amount of the assessment,

less taxes already paid.  This court's jurisdiction is proper pursuant to 26 U.S.C. § 6213.

This matter is before the court on Reeves's and the government's motions for summary judgment.  As explained below, the court will enter partial summary judgment in favor of the government on the issue of tax liability and will allow the parties to engage in mediation on whether the assessment can still stand in light of the partial-liability determination.


## I.  SUMMARY-JUDGMENT STANDARD

In general, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Under Rule 56, the party seeking summary judgment must first inform the court of the basis for the motion.  The burden then shifts to the non-moving party to demonstrate why summary

2

judgment would not be proper.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-17 (11th Cir. 1993) (discussing burden-shifting under Rule 56).  The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## I. BACKGROUND

In February 1999, Reeves, along with numerous co-defendants, was indicted on 14 counts charging him with involvement in an illegal gambling business that received wagers placed on primarily professional and college football games.  Reeves entered into an agreement with the government to plead guilty to a one-count information charging money laundering, 18 U.S.C. § 1957; to forfeit certain property that was used as a part of the money-laundering scheme; and to cooperate with federal authorities in the bookmaking investigation and related

3

criminal prosecutions and civil-forfeiture hearings, including providing testimony in these proceedings. In return, the government agreed to dismiss the indictment against him and his wife and return certain property that could have been subject to forfeiture. The agreement also contained provisions limiting further prosecution of Reeves and limiting the later use of his testimony against him.

After Reeves pleaded guilty, and in compliance with the plea agreement, he provided testimony against several other members of the gambling ring. He then served 15 months in federal custody and forfeited certain property and cash.

The IRS then initiated civil-assessment proceedings against Reeves and determined his tax liability (including penalties and interest) at almost two-million dollars for excise tax generated through his participation in an illegal gambling ring. Reeves produced his own expert's report, which estimated his liability at $ 159,938, and he paid the IRS $ 100 for each month covered by the

4

assessment.  He also filed for refunds for each of the periods at issue, based on his position that the plea agreement prohibited collection of the taxes and penalties, but the IRS refused the refunds.

This lawsuit then ensued.


### III. DISCUSSION

This case presents three questions.  First, whether Reeves's criminal plea agreement prohibited the IRS from assessing civil-tax penalties.  Second, if not, whether the agreement still prohibited the IRS, in making and defending the assessment, from using Reeves's testimony given pursuant to the agreement.  Finally, if the plea agreement does preclude the use of this testimony, whether the assessment must nonetheless still stand.


### A. The Plea Agreement and Tax Liability

In support of his contention that the criminal plea agreement prohibits the later civil-tax assessment against

him, Reeves points to the language contained in § III(G)

of the plea agreement, which provides:

> "The United States further agrees that
> in return for the defendant's compliance
> with the terms of this agreement there
> will be no further federal criminal
> prosecution of the defendant in the
> Middle District of Alabama based on the
> information and evidence now available
> to the United States regarding the
> defendant's involvement with violations
> of 18 USC § 1955, 1956, and 1957 or any
> federal tax provision."

Pl.'s M. Summ. Judg., Exhibit B, Plea Agreement (doc. no.

27-3), at 8.   Because "plea bargains ... are like

contracts," and "are governed generally by the principles

of contract law," this court's task is to determine what

the parties' agreement was.  United States v. Rubbo, 396

F.3d 1330, 1334 (11th Cir. 2005) (internal citations and

quotations omitted).   In order to do so, the court must

first look to the language of the agreement.   United

States v. Copeland, 381 F.3d 1101, 1106 (11th Cir. 2004).

Here, the language of that agreement provides that

"there will be no further federal criminal prosecution of

the defendant" regarding tax violations.  Plea Agreement,

6

at 8 (emphasis added). The agreement is therefore explicit and clear that the prohibition on future proceedings against Reeves is limited to "criminal prosecution"; the agreement says absolutely nothing about limiting future civil proceedings, which would include civil-tax assessments. The agreement on its face therefore clearly does not prohibit civil proceedings, including the civil tax-assessment against Reeves. <u>United States v. Barrow</u>, 400 F.3d 109, 117-118 (2d Cir. 2005) ("Where the language of a contract is unambiguous, the parties' intent is discerned from the four corners [of their agreement]."); <u>see also</u> <u>United States v. Weaver</u>, 905 F.2d 1466, 1472 (11th Cir. 1990) ("A basic tenet of contract law is that a written agreement which is unambiguous on its face should be interpreted and enforced accordingly.").

Indeed, when the parties meant to specify that Reeves would be immunized against civil <u>and</u> criminal proceedings, they so provided in the agreement. For example, in § III(K)(1)(h) of the plea agreement, the parties specify

7

that statements made in connection with an offer to plead guilty "shall not be admissible in any <u>civil or criminal</u> proceedings against the defendant." Plea Agreement, at 11 (emphasis added). In addition, no evidence suggests that the parties considered or communicated at all about civil-tax matters.

However, pointing to the general proposition that the government may not take action inconsistent with "what the defendant reasonably understood [the government to agree to] when he entered his guilty plea," <u>Arnett v. United States</u>, 804 F.2d 1200, 1202-03 (11th Cir. 1986), Reeves contends that he reasonably understood his plea agreement to foreclose the action the government takes here: the pursuit of civil-tax penalties generated by the wagering activities to which he pleaded guilty. <u>Arnett</u>'s language is not applicable here, however.

There, the government entered into a plea agreement that included a forfeiture provision, but, after the execution of the agreement, sought further forfeiture. 804 F.2d at 1202. In light of the plea agreement, the

8

Eleventh Circuit Court of Appeals rejected the government's argument that it had a free hand to seek further forfeitures where the plea agreement did not specifically foreclose those further forfeitures. The court noted that the rights waived by a plea agreement are important ones and that, therefore, the government may not act in a manner "inconsistent with what the defendant reasonably understood when he entered his guilty plea." <u>Id</u>. at 1202-03. It found that Arnett reasonably understood the further forfeitures to be foreclosed by the agreement.

The court in <u>Arnett</u> was convinced that the defendant's understanding was reasonable on the basis of two factors, both of which are absent in Reeves's case. First, the government specifically sought forfeiture in <u>Arnett</u> and provided for it in the plea agreement, and the government then decided after the agreement that the amount it originally sought was insufficient. In <u>Arnett</u>, in other words, the government sought a second bite at the apple. In this case, the language of the agreement cuts the other

9

way; the agreement here specifically does not refer to civil matters at all. Second, in Arnett, there was an oral agreement that the government would not pursue forfeiture with respect to at least some of the property at issue. There is no suggestion on the record here that there was a similar oral agreement regarding civil-tax assessments.

Reeves also points to Creel v. Commissioner, 419 F.3d 1135 (11th Cir. 2005), arguing that promises the government made to him are "inextricably intertwined" with not pursuing civil penalties against him. Reeves argues that, as in Creel, his plea agreement contains conditions inextricably intertwined with a promise not to pursue civil-tax penalties and that civil penalties thus cannot be pursued. In Creel, the government included civil penalties in the criminal defendant's restitution and declared the restitution discharged after the defendant's payment; civil penalties thereafter sought by the government were thought by the court to be therefore "inextricably intertwined." 419 F.3d 1135, 1140-2

("Although not compelled to do so, the government discharged Creel's civil tax liabilities as part of the criminal case."). <u>Creel</u> therefore stands for the proposition that the government cannot 'undischarge' a debt. There was no similar provision in Reeves's plea agreement that provided for satisfaction of a civil-tax liability; rather, Reeves's plea agreement does not mention civil-tax liability at all. There is no interwinement between any of the provisions of his criminal plea agreement and the government's later civil pursuit of Reeves. <u>Creel</u> thus does not support Reeves's position.

To support his argument that he reasonably understood civil penalties to be foreclosed, Reeves also points to the affidavit of Assistant United States Attorney Ashton Holmes Ott, who participated in drafting the plea agreement. Ott states in her affidavit that she intended the plea agreement to be a global settlement of all liability, criminal and civil. However, Ott's unexpressed intent that there should have been a global settlement

11

cannot render Reeve's understanding reasonable when that understanding is contradicted by the explicit and clear language in the agreement.  Similarly, as to Reeves's own affidavit, which he submits to confirm that he understood the settlement to be similarly global, his understanding about his plea agreement, while perhaps real, must still be reasonable, and the understanding he posits cannot be reasonable in the face of the plain language of the agreement.

### B.  Prohibition on Use of Testimony

Reeves also argues that, in making the civil-tax assessment against him, the government was prohibited from using the testimony he gave in the criminal case and related proceedings.  He points to § III(C)(2) of the plea agreement, entitled "Cooperation Agreement," which provides that:

> "Provided the defendant satisfies the
> terms of this plea agreement, any
> information that he truthfully discloses

> to the government during the course of
> his cooperation, concerning related
> offenses, will not be used against him,
> directly or indirectly.  The defendant
> understands that this agreement does not
> bar his prosecution for capital
> felonies, perjury, false statements, and
> obstruction of justice."

Plea Agreement, at 6.  Reeves points specifically to the
language stating that "any information that he truthfully
discloses to the government during the course of his
cooperation, concerning related offenses, will not be used
against him, directly or indirectly."  The government
admits that, in making the civil-tax assessment, the IRS
used testimony Reeves provided in the criminal and related
proceedings; the government argues, however, that the word
"offenses" in the phrase "concerning related offenses"
should be understood to mean only criminal offenses, see
Black's Law Dictionary (8th ed. 2004), and thus prohibits
the use of Reeves's testimony in only criminal
proceedings, not civil matters, such as civil-tax
assessments.

Reeves has the better argument. The term "concerning related offenses" clearly modifies only the <u>breadth of the testimony</u> that is protected by the agreement. The testimony protected is "any information that he truthfully discloses to the government during the course of his cooperation, concerning related offenses." The <u>breadth of the protection</u> of that testimony, in contrast, is found in the remainder of the sentence: the testimony "will not be used against him, directly or indirectly." Nothing in this phrase limits the protection or prohibition to criminal proceedings; indeed, the prohibition is open-ended and broad, extending to both direct and indirect use. Because the prohibition is so open-ended and broad, the court must hold that a reasonable factfinder would have to conclude that the protection extends to all related proceedings, criminal and civil, including civil-tax assessments.[*]

_____

[*]Moreover, even if the phrase "concerning related offenses" could be viewed as restricting the breadth of the protection the agreement affords Reeves's testimony, summary judgment in favor of the government would still

(continued...)

14

_____

(...continued)

not be proper on this aspect of the case.  Like the term
"prosecution," depending on the context, an "offense" can
be either civil or criminal.  <u>See</u>, <u>e.g.</u>, <u>United States v.
Stewart</u>, 489 U.S. 353, 365 n.5 (1989) ("Not all of those
countries    distinguish    between    civil    and    criminal
prosecutions    for    tax    offenses    as    does    the    United
States."); <u>Louis v. Comm'r of Internal Revenue</u>, 170 F.3d
1232, 1234 (9th Cir. 1999) ("This court recently held
additions to tax for fraud to be a civil remedy, not a
criminal punishment, and therefore beyond the scope of
the Double Jeopardy Clause, which prohibits only multiple
<u>criminal</u> punishments for the same offense.") (emphasis in
original); 28 U.S.C. § 6672 (addressing civil penalties,
and limiting application of other sections "for any
offense to which this section is applicable.").  In the
context of the term "prosecution," the parties stated in
the    agreement    that    they    were    referring    to    criminal
prosecution; there is no such similar limitation with
respect to the term "offenses."  Thus, the government's
argument that this provision unambiguously permits it to
use the deposition testimony in the civil prosecution
context is unavailing.  <u>See</u> <u>Copeland</u>, 381 F.3d at 1106
(finding that, where the language of an agreement simply
does not address the situation at hand, there is
ambiguity).    Reading    this    language    against    the
government, this court cannot agree with the government
that, as a matter of law, Reeves's understanding is
unreasonable.

    Also, because the court nonetheless finds that the
language (the testimony "will not be used against him,
directly or indirectly") prohibits the government from
using Reeves's testimony, the court need not examine
Reeves's    alternative    contention    that    language    in
§ III(K)(1)(h) of the plea agreement protects his
testimony.    That section provides, in relevant part,

(continued...)

15

## C. Validity of the Assessment

Having made a partial-liability determination--that is, that the plea agreement allowed the IRS to assess civil-penalties against Reeves, albeit without using the testimony he gave pursuit to the agreement--the court now turns to the validity of the assessment. The parties have asked that, should the court make this finding, they be allowed to engage in mediation on the issue of the

---

(...continued)
that:

> "The defendant, before entering a plea of guilty to Count One of the information currently pending against him advises the Court that ... [he] understands and has been advised that evidence of a guilty plea, later withdrawn or an offer to plead guilty to the crime charged in the Information herein, or of statements made in connection with and relevant to said plea or offer to plead, shall not be admissible in any civil or criminal proceedings against the defendant."

Plea Agreement, at 8-11.

validity of the assessment.  The court will grant their request.

An appropriate order will be entered.

DONE, this the 8th day of August, 2007.

    /s/ Myron H. Thompson
    UNITED STATES DISTRICT JUDGE